# Richmond.

## ARTHUR G. KING v. J. J. MARTIN.

### March 22, 1928.

#### Absent, Burks, J.

1. MALICIOUS PROSECUTION—*Where Defendant neither Instructed, Caused, nor had anything to do with Prosecution.*—Where the defendant in an action for malicious prosecution neither instructed, caused, nor had anything to do with the prosecution or plaintiff except to appear as a witness when summoned, the trial court erred in refusing to set aside a verdict against defendant as contrary to the law and the evidence.

2. MALICIOUS PROSECUTION—*Where Defendant neither Instructed, Caused, nor had anything to do with Prosecution—Case at Bar.*—In the instant case, an action for malicious prosecution, defendant, a householder, was held up at the point of a pistol and robbed in his own home. Thereafter he placed himself entirely in the hands of the duly constituted authorities. Not one single active or voluntary step was taken by him at any stage of the proceedings. Plaintiff was first summoned to the police station without defendant's knowledge or procurement. Defendant went to the police station only when summoned. When he arrived he stated his honest belief as to the identity of plaintiff as the robber. He did not request that plaintiff be held or that he be arrested or that he be jailed, but went on his way having performed simply the duty which any good citizen should. When summoned he repeated his belief as to the identity of plaintiff and the robber before the grand jury and the petit jury.

   *Held:* That this conduct of defendant was insufficient to support an action for malicious prosecution by plaintiff.

3. MALICIOUS PROSECUTION—*Where Defendant neither Instructed, Caused, nor had anything to do with Prosecution—Instructions—Case at Bar.*—In the instant case, an action for malicious prosecution, defendant asked the court to instruct the jury *that if they believe from the evidence that defendant neither caused nor procured the plaintiff to be arrested, indicted, or tried, they should find for defendant,* and that if defendant, at the instance of the police department, stated his honest belief as to the identity of the plaintiff with the person who

committed the robbery at his house, and testified to the same facts before the grand jury and the petit jury, those facts did not constitute a causing or procuring of the arrest, indictment or trial of the plaintiff within the meaning of the instruction. The trial court gave the part of the instruction italicized but refused to give the remainder.

*Held:* That since, as a matter of law, defendant was not responsible for the prosecution, and the instruction fairly stated the facts, it should have been given.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Reversed and judgment rendered.*

The opinion states the case.

*Williams, Loyall & Tunstall,* for the plaintiff in error.

*S. M. Brandt,* for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This is a notice of motion for judgment based upon the alleged malicious prosecution of J. J. Martin, hereinafter called plaintiff, by Arthur G. King, hereinafter called defendant or Mr. King. There were, originally, four other defendants, Elnora King, mother of Arthur G. King, and A. M. Allen, W. H. Fleet and L. Nowitsky, the last three being members of the police force of the city of Norfolk.

There was no service of process on Elnora King, and the case was dismissed, during the trial, as to the police officers. The jury returned a verdict against the remaining defendant, Arthur G. King for $500.00

with interest from July 26, 1926. The trial court refused to set aside the verdict on motion of the defendant, and entered judgment thereon.

The facts of the case are quite clearly stated in the petition for a writ of error, in substance as follows: On or about the 26th day of August, 1925, at about 8:30 in the evening, the defendant and his mother were sitting in the living room of his home at Meadowbrook, one of the suburban sections of the city of Norfolk. They were the only people in the house with the exception of defendant's oldest boy, who was then about four years old. Defendant heard a voice, and looked around and saw a man standing in the doorway. He started to jump up but the man told him to keep perfectly still or he would shoot him, his mother likewise called to him to keep still. The intruder ordered defendant and his mother to go upstairs and into one of the back rooms and as they went in the door Mr. King could see very clearly in a mirror that the man had a pistol, which he held against Mr. King's back while he went through his pockets. Leaving Mr. King and his mother for a minute the man went into the next room and went through the drawers and came back in probably less than a minute and said that he was going to stand outside and shoot defendant if he attempted to follow him. One or two minutes after the front door was closed Mr. King heard a car start and as soon as Mr. King came downstairs he called the police, subsequently looking out of the door, but finding no car in sight. The robber got all of the jewelry of Mr. King's wife and a small amount of cash which he had in his pocket.

Some thirty-five or forty minutes after the robbery several detectives arrived, to whom Mr. King gave as good a description as he could of the robber, but ex-

plained that he had not gotten a very good view of his features as most of the time he was in the light and the robber was in the shadow, so that he was not able to distinguish his features very clearly and limited his description very largely to his size and general appearance.

Defendant left the matter entirely in the hands of the police department of the city of Norfolk. Several times he was requested by that department to come to the police station to look at pictures of people whom they had suspected, but none of the pictures appeared to tally with his recollection of the man's appearance. Finally, on the morning of the 18th of September, the police department communicated with Mr. King, stating that they had a man they wanted him to look at and asked him to bring his mother with him. Together they went to the police station, where the police officers said that they had a man who they were almost certain was the burglar.

The purpose of sending for Mr. and Mrs. King was, of course, to secure an identification. The method pursued was that Martin and some ten or twelve other men were caused to stand up in a line in a room known as the Bureau of Identification and Mr. and Mrs. King were sent separately into the room to see whether they could say which man of those in the line seemed to be the robber. Mr. and Mrs. King went into the room separately, entering from different doors, and had no opportunity of communicating with each other.

There is a general agreement among the witnesses that Mrs. King's identification was quite positive and direct.

The evidence is conflicting as to the positiveness of the identification made by Mr. King.

In point of fact, however, it is not important, in our

view, whether Mr. King's identification was positive
or not.

After the identification, such as it was, was made at
the police station, Mr. and Mrs. King took their leave.
They did not request that Martin be arrested or held.
On the complaint and information of Officer A. M.
Allen, however, a warrant was sworn out for Martin's
arrest, which was thereupon executed and Martin was
committed to jail.    He was subsequently indicted by
the grand jury, before which defendant was called and
testified, and later tried in the corporation court.    At
the trial Mr. King testified exactly in accordance with
the statements which he said he had previously made.
Mrs. King's testimony was much less positive than her
original identification and Martin was, on the 21st day
of October, 1925, acquitted and discharged.    This
action, after some correspondence between counsel,
followed.

There are two assignments of error:

1. The court erred in refusing to give the instruction
for the defendant set forth in certificate of exception
No. 1, upon the grounds set forth in that certificate of
exception.

[1] 2. The court erred in refusing to set aside the
verdict on the ground that it was contrary to the law
and the evidence as set forth in certificate of exception
No. 4, for the reasons stated in said certificate.

The defendant's principal defense was that he neither
instituted nor caused, nor had anything to do with, the
prosecution upon which the action was based.    This
question is involved in both assignments of error.    The
second assignment presents the additional defense that
the circumstances of the case fail to show a want of
probable cause, and negative the existence of malice,
but as we are of opinion that the evidence, in spite

of the jury's verdict, as a matter of law, fails to show that the defendant instigated or caused or had anything to do with the prosecution except to appear as a witness when summoned, it is only necessary to consider the assignments of error as they relate to this defense.

As stated, there is a conflict in the evidence as to the positiveness with which the defendant identified the plaintiff as the man who committed the robbery. Putting defendant's testimony in the most favorable light from the standpoint of the plaintiff, however, he did no more than say, in response to a question, "that is him" and when admonished to be sure of the identity of plaintiff as the guilty party, nodded his head. There is nothing in this that amounts to a prosecution, nor in anything else that the defendant said or did.

[2] Here is a situation where a householder is held up at the point of a pistol and robbed and thereafter places himself entirely in the hands of the duly constituted authorities. Not one single active or voluntary step was taken by him at any stage of the proceedings. The plaintiff was first summoned to the police station by detective Nowitsky without defendant's knowledge or procurement. Mr. King went to the police station only when summoned to come there by police officers. When he arrived there he stated his honest belief, he did not request that Martin be held or that he be arrested or that he be jailed, but went on his way having performed simply the duty which any good citizen should. Summoned to appear before the grand jury, he repeated his belief there, and before the petit jury he did the same thing.

If this conduct by a citizen who has been held up and robbed, and this identification of a suspect, are sufficient to support an action for malicious prosecution,

it would be hard indeed to procure testimony with regard to identity in any case, where the fate of the witness from the standpoint of damages was ultimately dependent upon the verdict of a jury in a criminal prosecution, with all the safeguards with which one accused of crime is invested in such a trial.

[3] In view of the facts and circumstances which developed at the trial of the instant case, after the conclusion of the evidence, the defendant tendered the following instruction: "The court instructs the jury that if they believe from the evidence that the defendant, Arthur G. King, neither caused nor procured the plaintiff to be arrested, indicted or tried, they should find for the said defendant, Arthur G. King; and in this connection the jury is further instructed that even though they may believe from the evidence that the said defendant, Arthur G. King, at the instance of officers of the police department of the city of Norfolk, stated his honest belief as to the identity of the plaintiff with the person who committed the robbery at his house, and subsequently testified to the same facts before the grand jury by whom the said plaintiff was indicted, and the petit jury before whom he was tried, those facts do not constitute a causing or procuring of the arrest, indictment or trial of the said plaintiff within the meaning of this instruction."

The court refused this instruction and in the place thereof gave the following instruction: "The court instructs the jury that if they believe from the evidence that the defendant, Arthur G. King, neither caused nor procured the plaintiff to be arrested, indicted, or tried, they should find for the said defendant, Arthur G. King."

Since the defendant, as we have seen, as a matter of law, was not responsible for the prosecution, and the

instruction fairly stated the facts, it should have been given. If given it would have ended the case in a verdict and judgment for the defendant, the only proper conclusion of the case under the circumstances.

There are few cases in point, no doubt because cases of the inherent weakness of the case at bar seldom reach the courts. *Atkinson* v. *Birmingham*, 44 R. I. 123, 116 Atl. 205, 36 A. L. R. 366, is, however, in point, although the facts there were less favorable to the defense than those in the instant case.

It there appeared that the defendant, Margaret Birmingham, while walking in a public street, had lost from an open handbag a five dollar bill and a two dollar bill folded together. A little later the plaintiff, Sarah J. Atkinson, walking on the same street, saw some paper money lying on the ground, picked it up and remarked to a witness named Crown that the money was hers. Still later the defendant, Birmingham, while searching the street for her money, learned from another witness, Todd, that the plaintiff had found some money on the sidewalk, and the defendant, Birmingham, thereupon went to the plaintiff's house and demanded the return of seven dollars which was the amount she had lost. The plaintiff offered to turn over to the defendant two dollars, which she claimed was all that she had found. The defendant, Birmingham, reported her loss to the defendant, Costigan, who was captain of the police precinct in which the money was lost, and he directed a subordinate, the defendant Hindmarsh, to interview the plaintiff in company with the defendant, Birmingham. Still later the defendant, Costigan, directed the same subordinate with another one to interview the witnesses who were present when the plaintiff picked the money up, or saw her do so. These subordinates reported

to Costigan the result of their interviews with the two witnesses, who stated that there was more than one bill picked up by the plaintiff. Costigan himself thereafter personally interviewed one of these witnesses and the plaintiff, and the latter again denied that she had found more than a two dollar bill, which she expressed her willingness to return. Costigan then reported these facts to the deputy chief of police and requested that a criminal complaint be made against the plaintiff charging her with larceny of seven dollars from the defendant, Birmingham. The plaintiff was subsequently arraigned, tried, and found not guilty, and thereupon sued the defendant Birmingham, the defendant Costigan, and the defendant Hindmarsh, to recover damages for malicious prosecution. In denying recovery the court said: "In order to recover against either of these defendants, the plaintiff must establish by a preponderance of evidence that such defendant caused, or assisted in causing, said criminal prosecution to be instituted against her. As to the defendant, Birmingham, it appears that she truthfully reported the facts within her knowledge to Captain Costigan, and that she neither induced nor requested the police authorities to commence said criminal proceeding, nor assisted in its prosecution, save that when summoned by the police she testified as a witness for the complainant. As to the defendant, Hindmarsh, it appears that his sole connection with the matter was to follow the direction of his superior officer and to report to such superior officer the result of his interviews with the plaintiff and the witnesses, Crown and Todd, and later when summoned as a witness he testified as to such interviews. The justice was clearly warranted in ruling that there was no evidence before the jury that either of the defendants, Birmingham and

Hindmarsh, had procured, or had assisted in procuring, the criminal prosecution of the plaintiff, or had recommended or requested the same.    There was no error in the ruling of said justice directing a verdict in favor of the defendants, Birmingham and Hindmarsh."

It will be noted that in this case the defendant, Birmingham, who occupied the position corresponding to that of Mr. King, herself reported the matter to the police department after she had had cause to suspect the plaintiff and had demanded the return of the money from the plaintiff, whereas, in the present case Mr. King did not initiate the police investigation at all, but merely stated in good faith his belief as to the facts after the police department had brought Martin to the police station.

From the foregoing, we conclude that the court erred in not setting aside the verdict of the jury and entering judgment for the defendant.    This court will now proceed to enter the judgment which, in its judgment, the trial court should have entered.

*Reversed and judgment rendered.*