**CAMPBELL v. YELLOW CAB CO.**

No. 8016.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 7, 1942.

Reargued July 12, 1943.

Decided Aug. 31, 1943.

Bernard G. Segal, of Philadelphia, Pa. (Gilbert W. Oswald and Schnader & Lewis, all of Philadelphia, Pa., on the brief), for appellant.

Harry R. Kozart, of Philadelphia, Pa. (William Charles Brown, of Philadelphia Pa., on the brief), for appellee.

Before BIGGS, MARIS, JONES, GOODRICH, and McLAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff, a citizen of Pennsylvania, brought suit in the District Court for the Eastern District of Pennsylvania against the defendant, a Delaware corporation, to recover damages for an alleged malicious prosecution and false imprisonment. At the close of the case the defendant moved for a directed verdict, which motion was denied. The jury returned a verdict for the plaintiff and assessed compensatory damages at $3,000 and punitive damages at $2,500. The trial court denied motions for a new trial and for judgment n.o.v. and entered judgment for $5,500 for the plaintiff. The circumstances giving rise to the plaintiff's claim were as follows:

On August 24, 1940, at 1.15 A.M. two men held up a taxicab owned by the defendant and operated by its employee, William Berry. They took from Berry $1.10 of his money, 40 cents in fares belonging to the defendant and the taxicab. Later in the day the taxicab was found abandoned. The meter registered $4.85. Berry, in accordance with the defendant's rules, paid over to the defendant the amount of the stolen fares and the meter charges. He reported the holdup to the defendant and then, accompanied by a supervisor, reported to the police to whom he gave a description of the highwaymen. He did not see the taller of the two robbers full face at any time. He did, however, see his face from the bridge of the nose down, the top and back of his head, the color and thickness of his hair and his complexion. Also he heard him speak and observed his gait. He was able to estimate the robber's age, height and weight.

On October 19, 1940, a policeman took the plaintiff into custody on suspicion of rifling an automobile in the Logan district of Philadelphia where the holdup had oc-

curred. Because Berry's description of the taller robber seemed to fit the plaintiff the police telephoned Berry who went to the police station where the plaintiff was being held pending investigation and identified the plaintiff as one of the men who had robbed him. The same day Berry returned for a second look at the plaintiff. The following morning the plaintiff was taken by the police to the magistrate's court where Berry once again identified him. The magistrate held the plaintiff without bail for a further hearing. According to the plaintiff's testimony he was held for further hearing in response to a request by James F. Hardy, an individual employed by the defendant as a special agent and investigator. This testimony was contradicted by many witnesses called by the defendant. At the second hearing on October 26, 1940, the plaintiff was held without bail for court. Neither Berry nor Hardy actively participated at this hearing. Subsequently the plaintiff was indicted and charged with criminal offenses arising out of the holdup. On October 31, 1940, the plaintiff was brought to trial but the case was continued at his attorney's request.

On November 6, 1940, the police arrested two men who confessed to the robbery. Later they were tried, convicted and sentenced. The defendant thereafter reimbursed Berry for the stolen fares and for the meter charges which he had previously paid. As described by Berry one of the robbers was 23 years old, five feet eleven inches tall, weighed 180 pounds, with a light complexion and light brown hair, and of Irish descent. One of the confessed robbers was about 24 years old, five feet eleven inches tall, weighed 170 pounds, and had light brown hair. A detective testified that the man who confessed to being the robber looked so much like the plaintiff

that they could be taken for the same person. In a signed statement given to the defendant on November 11, 1940 Berry said "After I got home from this hearing on October 19, 1940 [probably October 26, 1940], I started to think this case over and saw quite a few flaws which I did not see at the time of identification or either hearing. A doubt arose in my mind whether this was the man who held me up or not." On November 12, 1940, the plaintiff was again brought to trial. At this trial Berry testified that he was mistaken in his identification. At the request of the district attorney and the attorney for Campbell the trial judge directed a verdict of not guilty and Campbell was discharged.

■ The defendant contends that several of the elements essential to the recovery of damages in an action for malicious prosecution are missing in the plaintiff's case.[1] The defendant urges that neither it nor its employees initiated nor procured the institution of criminal proceedings against the plaintiff, that if either Berry or Hardy did procure the prosecution they acted without authority and that the effect of lack of authority was not overcome by later ratification. It further urges that the evidence does not support a finding that either Berry or Hardy acted without probable cause and with malice. For these reasons the defendant argues that the refusal of the trial court to direct a verdict and thereafter to enter judgment in its favor was error.

We shall direct our attention first to the question whether Berry initiated or procured the institution of criminal proceedings against the plaintiff and whether the jury's finding that he did, which is implicit in its verdict for the plaintiff and its special findings[2] can be sustained by

---

[1] Those elements are set out in the Restatement of Torts § 653—Elements of a Cause of Action, as follows:

"(1) A private person who initiates criminal proceedings against another who is not guilty of the offense charged is liable to him for the harm done thereby if the proceedings

"(a) were initiated

"(i) without probable cause, and

"(ii) primarily because of a purpose other than that of bringing an offender to justice, and

"(b) have terminated in favor of the accused.

"(2) A private person who procures the

institution of criminal proceedings against another is liable under the conditions stated in Subsection (1)."

See also Altman v. Standard Refrig. Co., Inc., 1941, 315 Pa. 465, 173 A. 411.

[2] The trial judge did not submit an interrogatory which dealt directly with the question whether Berry instituted the criminal proceedings. He did, however, submit interrogatories which dealt with the effect of Berry's identification of the plaintiff. Those interrogatories and their replies are as follows:

"1. Did Berry have probable cause for identifying Campbell as one of the men

the evidence. The evidence is uncontradicted that Berry did not cause the arrest of the plaintiff, that he came to the police station to identify the plaintiff only by reason of a telephone request by the police, that he did not seek the continued detention of the plaintiff, did not request that the plaintiff be brought before the magistrate and did not press for the subsequent trial of the plaintiff. His sole role was to identify the plaintiff as one of the robbers. He at no time took the initiative. He at no time, either expressly or by indirection, directed, requested or exerted any pressure upon the police to proceed with the prosecution of the plaintiff.

 The statement by the trial court that the real prosecutor or instigator of a malicious prosecution cannot escape liability by showing that he was not the prosecutor of record is fully supported by the cases cited.[3] Neither the statement nor the cited authorities, however, can have any application to a case such as this, where a person called upon by police officers to identify a suspect merely makes an identification and does not otherwise attempt to influence the officers in the exercise of their discretion as to the prosecution of the person identified. If under such circumstances the person making the identification believes it to be correct he is not deemed the instigator of criminal proceedings subsequently begun by the police officers in the exercise of their discretion even though his identification may have been without probable cause and with malice. Restatement of Torts, § 653, Comment g. The uncontradicted evidence in this case indicates that Berry believed his identification of the plaintiff to be correct when he made it. It also indicates that, aside from the identification, he did nothing whatever to influence the police officers in the action they subsequently took. The subsequent holding of the plaintiff upon the charge of robbing Berry was not at the latter's instance.

The facts in King v. Martin, 1928, 150 Va. 122, 142 S.E. 358, are quite similar to those in the case before us. The defendant in that case was held up and robbed at the point of a gun by a man who was in the shadow and whose features the defendant was unable to distinguish for that reason. The defendant gave a description of the burglar to the police, his description being limited largely to the man's size and general appearance. Later the police asked the defendant to look at the plaintiff whom they had in custody and whom they believed to be the burglar. From among ten or twelve men presented for his inspection the defendant selected the plaintiff and said "This is him" and when admonished to be certain in his identification nodded his head. He did not request that the plaintiff be arrested or held. A warrant was sworn out upon complaint of a police officer, the plaintiff was indicted, tried and acquitted. The defendant was called as a witness and testified both before the grand and petit juries. The plaintiff after his acquittal brought an action against the defendant and others for malicious prosecution and secured a verdict and judgment against the defendant. The appellate court reversed and entered judgment for the defendant on the ground that there was no evidence that the defendant caused or procured the plaintiff's arrest, indictment or trial. The court's reasoning is so apposite that we quote from the opinion at some length (142 S.E. at page 360):

"Here is a situation where a householder is held up at the point of a pistol and robbed, and thereafter places himself entirely in the hands of the duly constituted authorities. Not one single active or voluntary step was taken by him at any stage of the proceedings. The plaintiff was first summoned to the police station by Detective Nowitsky without defendant's knowledge or procurement. Mr. King went to the police station only when summoned to come there by police officers. When he arrived there he stated his honest belief; he did not request that Martin be held, or that he be arrested, or that he be jailed, but went on his way, having performed simply the duty which any good citizen should. Summoned to appear before the

---

who robbed him? Answer Yes or No. No."

"2. Was his act in identifying Campbell wanton and reckless? Answer Yes or No. Yes."

"3. Was his act in identifying Campbell malicious? Answer Yes or No. Yes."

"4. When Berry identified Campbell at the police station as one of the men who had robbed him, was he acting within the scope of his employment? Answer Yes or No. Yes."

3 Burk v. Howley, 1897, 179 Pa. 539, 36 A. 327, 57 Am.St.Rep. 607; Baker v. Moore, 1905, 29 Pa.Super. 301; Cooper v. Electro-Tint Co., 1918, 70 Pa.Super. 517.

grand jury, he repeated his belief there, and before the petit jury he did the same thing.

"If this conduct by a citizen, who has been held up and robbed, and this identification of a suspect are sufficient to support an action for malicious prosecution, it would be hard, indeed, to procure testimony with regard to identity in any case, where the fate of the witness from the standpoint of damages was ultimately dependent upon the verdict of a jury in a criminal prosecution, with all the safeguards with which one accused of crime is invested in such a trial."

We find no Pennsylvania decision upon this precise point. The rule stated in Comment g to § 653 of the Restatement of Torts and applied in King v. Martin, supra, is, however, founded upon good reason and a sound public policy. No case from any jurisdiction holding to the contrary has been called to our attention. We think that it is the rule which the Pennsylvania courts would apply to the facts of this case and we accordingly apply it. It follows that Berry did not commit a tort. Consequently there can be no vicarious liability imposed upon the defendant arising out of the fact that Berry made the identification.

■ An entirely different situation arises by reason of Hardy's participation in the proceedings. As we have seen there is evidence that Hardy requested the further detention of the plaintiff. Although contradicted by many witnesses the conflict was resolved by the jury in favor of the plaintiff.[4] We must, therefore, accept as a fact that Hardy procured the institution of criminal proceedings against the plaintiff. The question remains whether the evidence supports a finding that Hardy acted without probable cause.

■ Where there is no conflict in the testimony as to the circumstances under which the defendant acted in initiating the proceedings, or the circumstances are admitted by the parties or the evidence is clear and uncontradicted, there is no need for a finding of the jury as to the facts upon which the existence or nonexistence of probable cause is to be based. In such case it is the sole function of the trial judge to make this determination. Restatement of Torts, § 673, Comment g. This is clearly the law of Pennsylvania. In Robitzek v. Daum, 1908, 220 Pa. 61, at page 64, 69 A. 96, the court said: "What is probable cause and whether it exists under an admitted or clearly established state of facts, is a question of law for the court." In Taylor v. American I. Shipbuildiing Corp., 1922, 275 Pa. 229, at page 231, 119 A. 130, it is said: "It is exclusively for the jury to pass on testimony, but the court must say, as a matter of law, whether the facts proven show probable cause. Generally it is a mixed question of law and fact, and, where the facts are in dispute, they must be submitted to the jury, who should be instructed as to what facts constitute probable cause. But, if all the admitted facts, and the reasonable inferences therefrom, amount to probable cause, the court must so declare and direct a verdict for defendant. * * *" In Taubman v. Schulte, 1931, 302 Pa. 170, 172, 153 A. 150, 151 the court said: "Where, however, plaintiff's own testimony shows the existence of probable cause, this burden is lifted from defendant (Bernar v. Dunlap, 94 Pa. 329, 331; Cooper v. Wm. R. Hart & Co., 147 Pa. 594, 598, 23 A. 833; Taylor v. American International Shipbuilding Corp., 275 Pa. 229, 231, 119 A. 130), and it becomes the duty of the court to enter a nonsuit or to direct a verdict for defendant (Boyd v. Kerr, 216 Pa. 259, 65 A. 674)."

■ That part of the evidence in the case before us which has any relevancy to the issue of probable cause is undisputed. As we have indicated, where the evidence is uncontroverted the question whether the defendant acted without probable cause is for the trial judge and not for the jury. Consequently the trial judge erred in submitting that question to the jury. The error would have been harmless, however, if the jury's finding that the defendant acted without probable cause was the finding which the trial judge should have made from the evidence. We shall, therefore, examine the evidence to determine whether it justifies a finding that Hardy acted without probable cause. The evidence is to the effect that when Hardy requested that the

---

[4] The interrogatories and answers thereto which deal with Hardy's participation make this abundantly clear:

"6. Was Mr Hardy present at the hearing before the Magistrate? Answer Yes or No. Yes."

"7. If your answer is 'Yes' to the foregoing question, did he make a statement asking the Magistrate to have Campbell held? Answer Yes or No. Yes."

plaintiff be held he did so in reliance upon a positive identification by his fellow employee Berry, the only eye witness to the holdup. This was done in a proceeding before a magistrate at which Berry was a witness. That is all we have in the record upon this point. Bearing in mind that the burden of showing want of probable cause was upon the plaintiff, we have the narrow question whether establishment of the fact that Hardy furthered the prosecution of the plaintiff under these circumstances meets this burden.

**■■** The law of Pennsylvania is that "Representations of others may be sufficient foundation for it [probable cause], especially if made by those who have had opportunities for knowledge." Taylor v. American I. Shipbuilding Corp., 1922, 275 Pa. 229, 231, 119 A. 130; Bernar v. Dunlap, 1880, 94 Pa. 329. Compare Bunting v. Goldstein, 1925, 283 Pa. 356, 129 A. 99; Smith v. Ege, 1866, 52 Pa. 419. The decision in Bernar v. Dunlap, supra, seems very close to the facts of the instant case. In an action for malicious prosecution, the trial judge had non-suited the plaintiff and he appealed. In affirming the judgment below the court in its per curiam opinion said: "The express and distinct statement of Curtis [5] * * * gave probable cause. Nothing is shown proving that the statement was not honestly made by Curtis, and in entire good faith believed by the defendant." This is a direct ruling by the Pennsylvania Supreme Court that a plaintiff in a malicious prosecution suit growing out of a situation analogous to the present one is not entitled to recover if he fails to show that the witness upon whom the defendant relied in instituting the prosecution was not acting honestly and that the defendant did not in good faith believe his identification. As we have already pointed out, there was no evidence in the present case from which the jury might have inferred that Berry was not honest in his identification or that Hardy did not accept that identification in good faith.

**■** It is argued that it must be held as a matter of law that Berry's opportunity for knowledge under the circumstances here present was not sufficient to enable him in good faith to make any identification of the robbers and that since Hardy must have known this he must be held to have acted without probable cause. As we have already indicated, the plaintiff failed to sustain the burden of showing how much Hardy knew of Berry's means of knowledge. Unless he did have knowledge of the circumstances it would not affect the reasonableness of his reliance upon Berry's identification. "Where the accuser bases his charge upon a third person's identification of the accused, it is immaterial that the informant acted unreasonably in making the identification." Restatement of Torts, § 662, Comment g. But even if we were to assume that Hardy knew the whole story we could not hold as a matter of law that he was not justified in good faith in relying upon it. In Commonwealth v. Tracey, 1938, 130 Pa.Super. 15, 17, 18, 196 A. 549, 550 the Superior Court of Pennsylvania held that the testimony of an identifying witness was properly submitted to the jury under the following circumstances: "The only witness called by the Commonwealth to identify appellant and place him at the scene of the crime testified that two masked men, one of whom was appellant, entered Gimbel Bros.' garage, where the witness was employed, and held a gun on him. Appellant wore a cap pulled down over his face with two holes in it for the eyes, which covered the upper part of his face and part of his upper lip, leaving his mouth visible. He also wore an overcoat with the collar turned up so that it covered part of his chin. The garage was well lighted by arc lights, and both men stood directly under them. Appellant stood three feet back of his accomplice, while the latter held the witness. Both then ran to the cashier's cage where appellant scooped the money out of the till into a bag and then ran with it to the door. This witness testified he was positive that appellant was the man whom he saw. Whether this testimony amounted to an identification of appellant was a question for the jury." Since in the case before us Berry was able to see as much if not more of the robber's face as was the witness in the Tracey case and had a much longer time in which to observe him and hear his voice it cannot be held as a matter of Pennsylvania law that Berry's identi-

---

[5] Curtis was a third party who said he had seen Dunlap's missing gauntlets in the possession of Bernar, the plaintiff in the malicious prosecution suit. Dunlap upon Curtis' statement caused the prosecution of the plaintiff. Curtis' relation to Dunlap does not appear.

924

fication of the plaintiff as the robber must necessarily have been in bad faith.

It is also argued that Berry's financial interest in securing a conviction was such as to discredit his identification to the extent that it must be held as a matter of law that Hardy, if he knew of the interest, may not have been justified in relying upon the identification as a basis for his action. It may be conceded that if Hardy, when he acted upon Berry's identification, knew of the latter's financial interest a question of his good faith might have been raised for the jury's determination. The difficulty is that there was no evidence whatever that Hardy did know of Berry's interest when he acted. Consequently this issue was not in the case because the plaintiff failed to lay the evidential basis for it.

We conclude that there was no evidence in this case from which a fact situation might be found which would justify a ruling by the court that Hardy acted without probable cause. It should be remembered that the interests of society require that a citizen who performs his duty in assisting the public authorities to apprehend and prosecute criminals shall not be penalized for a mere error in so doing. As was said in Gilliford v. Windel, 1884, 108 Pa. 142, 145, "As it is the duty of every citizen to aid in enforcing the criminal laws of the state against those by whom they are wilfully disobeyed, so is it the business of our courts of justice to see that the person thus undertaking to vindicate the law shall not suffer in consequence of such an attempt, even though it may have proved abortive." See also introductory note to Chapter 29—Wrongful Prosecution of Criminal Proceedings—of the Restatement of Torts.

Since it was error to find that Hardy acted without probable cause it follows that his employer, the defendant, cannot be charged with having so acted. The court, therefore, erred in denying the defendant's motion to set aside the verdict and judgment in favor of the plaintiff and to enter judgment for the defendant.

The judgment of the district court is reversed and the cause is remanded with directions to set aside the verdict and judgment in favor of the plaintiff and to enter judgment for the defendant.

BIGGS, Circuit Judge (dissenting).

Conceding that, under the law of Pennsylvania, "Representations of others may be sufficient foundation for * * * [probable cause], especially if made by those who have had opportunities for knowledge.", and conceding also that, under the same presently pertinent law, probable cause is a question of law for the court when the facts are undisputed, I think that the evidence in this case in support of probable cause involves a matter of credibility which is peculiarly within the province of a jury to pass upon.

The majority, relying on the rule enunciated in Bernar v. Dunlap, 94 Pa. 329, 337, and quoting from the decision in that case, state, " 'The express and distinct statement of Curtis [a third party] * * * gave probable cause. Nothing is shown proving that the statement was not honestly made by Curtis, and in entire good faith believed by the defendant.' This is a direct ruling by the Pennsylvania Supreme Court that a plaintiff in a malicious prosecution suit growing out of a situation analogous to the present one is not entitled to recover if he fails to show that the witness upon whom the defendant relied in instituting the prosecution was not acting honestly and that the defendant did not in good faith believe his identification. As we have already pointed out, *there was no evidence in the present case from which the jury might have inferred that Berry was not honest in his identification or that Hardy did not accept that identification in good faith.*" I have italicized what I consider to be the erroneous conclusions contained in the majority opinion.

Campbell was acquitted by direction of the court without being required to offer evidence at trial,—a situation that should furnish a presumption of a want of probable cause as readily as does a discharge by a committing magistrate for want of evidence. Cf. Bernar v. Dunlap, supra. Berry's identification of Campbell is the ground relied upon for probable cause. The case against the defendant company therefore depends on the prudence and good faith of its agent Hardy's willingness to rely on Berry's identification under the circumstances which I shall now relate.

Berry testified that it is the rule of the Yellow Cab Company that a driver who asserts he has been robbed has to pay to that company the fares which he has collected plus any amount shown as due upon the cab's meter; that the amount paid by the driver could not be recovered by him from the company until the robber had been arrested and convicted. Berry had

been compelled to pay the Yellow Cab Company the sum of $4.85 under this rule. It was permissible, therefore, for the jury to infer that Berry in identifying Campbell as the robber had been animated to an extent at least by his desire to recover the money which he had been compelled to pay to the company. The inference is still further strengthened by the fact that Berry, who had been able to give only a very limited description of the man who had robbed him, stated to the police after a brief inspection of Campbell, "That's him to a T * * *", viz., that Campbell's appearance was perfectly or precisely that of one of the robbers.

At the hearing before the Committing Magistrate on October 20, 1940,[1] Berry identified Campbell as one of the robbers. The charges made by Berry against Campbell were read. These charges are not part of the record before us, but it is implicit in what happened to Campbell that they included the substance of Berry's statement that Campbell had robbed him. Hardy, an official of Yellow Cab Company, whose duty it was to attend magistrates' hearings, must be presumed to have known the rule that a driver who asserts that he has been robbed has to pay the company the sum of the fares collected by him and shown upon the cab's meter and cannot recover his payment until a robber has been convicted. But it is not necessary to rely on a presumption. Berry had informed Whistler, the superintendent of the defendant's garage out of which he worked, of the details of the robbery as soon as it had happened. The company, therefore, had knowledge of these details and if Hardy actually attended the magistrate's hearing, as two witnesses testified, it is proper to infer that he too knew of them.[2] Certainly from all of these circumstances a jury might have found that Hardy did not exercise reasonable care in acting forthwith on the basis of Berry's identification of Campbell.

Of course, the jury could also have found that Berry had made an honest identification of Campbell and that Hardy had accepted this identification in good faith. If these findings were made, the jury under the court's instruction would then have found that Hardy had probable cause. While the question of probable cause is for the court where the facts are undisputed or are not otherwise impeached, it must be conceded also that the truth or falsity of the circumstances relied on to prove probable cause is for the jury. As the majority opinion points out, "Where there is no conflict in the testimony as to the circumstances under which the defendant acted in initiating the proceedings, or the circumstances are admitted by the parties or the evidence is clear and uncontradicted, there is no need for a finding of the jury as to the facts upon which the existence or non-existence of probable cause is to be based. In such case it is the sole function of the trial judge to make this determination." Robitzek v. Daum, 1908, 220 Pa. 61, 69 A. 96, and Taylor v. American I. Shipbuilding Corp., 1922, 275 Pa. 229, 119 A. 130. But in the case at bar there is no admitted or indisputably established state of facts which would justify a court in concluding as a matter of law that, in identifying Campbell, Berry was not motivated by his interest or that Hardy acted in good faith in accepting Berry's identification under the circumstances at face value.

Notwithstanding the case is one for a jury on the basis of what the record discloses, I am nevertheless of the opinion that the judgment should be reversed and the cause remanded for a new trial at which Hardy's probable cause, whether or not he was actually present at the time of Berry's identification of Campbell, if so, whether he was there as a representative of the Yellow Cab Company, and related matters can be determined by the jury unembarrassed by any irrelevant question.[3] Berry was never a prosecutor and Campbell's case against the defendant must stand or fall on the question of whether or not Hardy was the prosecutor and on whether or not he had probable cause.

I am authorized to state that Judge JONES joins in this dissent.

---

[1] The hearing at which Campbell testified that Hardy asked that he be held for trial.

[2] I shall not deal with the two written reports which Berry asserts that he filed with the company on November 7th and November 11th, though I doubt whether the first report was filed at the date specified.

[3] The question of whether Yellow Cab Company ratified Berry's action in identifying Campbell is irrelevant. Hardy was acting as an agent of the company when he attended the hearing on October 20, 1940. This is conceded by the majority.