In re David Ross McGHEE, Debtor.

Alvin H. SHUMAN, Plaintiff,

v.

David Ross McGHEE, Defendant.

Bankruptcy No. 85–00482–R.
Adv. No. 85–0269–R–I.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Nov. 23, 1987.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court on the complaint of the plaintiff, Alvin H. Shuman ("Shuman"), for judgment against the defendant, David Ross McGhee ("McGhee"), for one count of malicious prosecution and one count of tortious interference with contractual rights and a finding that such claims are nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(6). Additionally, the plaintiff seeks two million dollars as compensatory damages, two million dollars as punitive damages, as well as attorney fees and expenses related to Count One. The plaintiff also seeks ten thousand dollars as compensatory damages, plus interest from January 17, 1984, one hundred thousand dollars punitive damages and his attorneys fees and costs related to Count Two. Upon the convening of a hearing on the request for an order, and after consideration of briefs filed by counsel and oral argument on the issues this Court makes the following findings of fact and conclusions of law.

## STATEMENT OF THE CASE

As President of Associated Electrical Services, Inc. ("Associated") the defendant, McGhee, alleges that sometime prior to the filing of his bankruptcy petition he was informed by the certified public accountant for Associated that the yearly audit of the corporation revealed that an employee, Shuman, the plaintiff in this proceeding, had reimbursed himself for a substantial amount of expenses incurred on behalf of the corporation. McGhee further alleges

that he was able to conclude from information received from his accountant and another employee of Associated that some of the checks issued to Shuman were unauthorized and that some of the checks had been altered by Shuman after the authorized signature had been obtained.

After hearing of Shuman's suspicious conduct, McGhee made an appointment with his attorney, Bruce E. Arkema, Esq., ("Arkema") to discuss his findings. At that meeting, and after a review of the entire matter, Arkema advised McGhee to contact the Henrico County Police Department and request an investigation. Despite McGhee's original intent to have his attorney conduct an "in-house" investigation, McGhee took Arkema's advice and contacted the Henrico Police Department where he was put in touch with Detective A.W. Vance ("Vance"). Vance reviewed the information and set up a meeting on or about February 15, 1984 with McGhee and Arkema in order to discuss the case.

Subsequently, McGhee met with George A. Martin, Jr., ("Martin") Deputy Commonwealth Attorney for Henrico County. Martin informed McGhee that he had reviewed the facts surrounding Shuman's alleged alteration of the checks and misappropriation of Associated's funds, including the information given by McGhee and the information gathered by Detective Vance, who had interviewed a number of witnesses. Martin then advised McGhee that the matter should be brought before a grand jury and, on September 11, 1984, a grand jury issued indictments for 11 counts of forging and uttering checks. The charges were subsequently *nolle prossed.*

Shuman, on the other hand, asserts that as an inducement for accepting the position of vice president of Associated, he was given a substantial expense account, including, but not limited to, reimbursement for personal trips to Charlotte, North Carolina to visit his family. Shuman further states, that as an inducement for accepting the position with Associated, he was granted the option to purchase shares of stock in the corporation. Shuman states that he had in the past given money to Associated for the purpose of acquiring equity in the corporation, and that he and McGhee later agreed that the monies initially given to the corporation were to be converted into a loan. McGhee denies that any money was ever given Associated for the purpose of Shuman acquiring equity in the corporation and contradicts Shuman's claim that he had agreed to convert any money given into a loan.

Shuman further alleges that over the course of his employment he made other personal loans to the corporation as well as causing Business Development, Inc. ("BDI"), a business of his, to make various other loans to Associated. Shuman asserts that he made personal loans directly to McGhee who subsequently had the money placed in an Associated corporate account entitled "Officer's Account." Shuman does not dispute that money was taken from Associated; however, he states that the funds that he took were for reimbursement of loans to the corporation or for reimbursement of previously agreed upon business expenses.

Shuman alleges that McGhee was fully aware of the nature of the transactions between Shuman and Associated and argues that McGhee did not make a full and fair disclosure of all relevant facts reflecting the true nature of the transactions that led to the indictments against him. McGhee asserts that he disclosed all facts relevant to the transactions which led to the indictment and states that he did not withhold information from either the Deputy Commonwealth's Attorney, Detective Vance, or Arkema. On the basis of McGhee's alleged wrongful nondisclosure of information, Shuman filed the instant complaint for judgment for malicious prosecution, and requests that the debt be declared nondischargeable in bankruptcy as a "willful and malicious" injury under 11 U.S.C. § 523(a)(6).

In Count Two of Shuman's complaint Shuman alleges that he "caused" BDI, a Virginia corporation, on his behalf, to loan to Associated the sum of eighteen thousand dollars. Although in his complaint Shuman alleges that the loan to Associated was an

enforceable contract between he and Associated, he later states that the contract that existed was actually between BDI and Associated, but that for all intents and purposes the contract was for his benefit.

Shuman further asserts that a portion of the loan to Associated was repaid by a check issued by Associated payable to BDI in the sum of ten thousand dollars, drawn on the account of Associated at Sovran Bank, N.A. Shuman claims that McGhee, acting on behalf and under the authority of Associated, wrongfully and maliciously placed a stop payment order on the ten thousand dollar check, and as a result he has been unable to collect any funds. For that reason, Shuman alleged that the stop payment order was a tortious interference with his contractual rights to receive payments, and as a result of McGhee's "malicious and deliberate actions," judgment should be entered for Shuman and the debt should also be declared nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(6).

## CONCLUSIONS OF LAW

### COUNT ONE

In his first Count Shuman has brought a malicious prosecution action against the defendant McGhee. In alleging malicious prosecution based on a state law cause of action the plaintiff seeks two million dollars as compensatory damages, two million dollars as punitive damages, as well as attorney fees and expenses related to the cause of action. Also, the plaintiff seeks to have the defendant's liability rendered nondischargeable under 11 U.S.C. § 523(a)(6) as a "willful and malicious injury."

The Virginia Supreme Court has recited four elements which must be proven by a plaintiff in order for a court to enter a judgment in favor of a plaintiff in a malicious prosecution action. These elements include: (1) that the prosecution was brought by or with the cooperation of the defendant; (2) that the prosecution ended in a manner favorable to the plaintiff; (3) that the defendant was without probable cause in bringing the action; and (4) that an action was brought by the defendant

with malicious intent. *Bill Edwards Oldsmobile, Inc. v. Carey,* 219 Va. 90, 96, 244 S.E.2d 767, 771 (1978); *Niese v. Klos,* 216 Va. 701, 703, 222 S.E.2d 798, 800 (1976). Additionally, it should be noted that malicious prosecution actions are not generally favored in Virginia and a court should allow recovery only when the requirements have been fully complied with. *Bane v. Phillips,* 217 Va. 387, 394, 228 S.E.2d 576, 581 (1976).

An examination of the first element of the charge concerning the institution of judicial proceedings by or with the cooperation of the defendant must first be made. The facts show that after becoming aware of what he considered to be suspicious checks that had been written by Shuman, McGhee met with his attorney and presented him with copies of these checks. Instead of doing an "in-house" investigation of the situation as McGhee had requested, Arkema advised him to deliver the material to the Commonwealth's Attorney of Henrico County so that office could perform an independent investigation of the entire situation.

As a result of Arkema's advice, McGhee and Arkema met with Detective A.W. Vance of the Henrico County Police on or about February 15, 1984. At that meeting, McGhee's suspicions concerning the checks were brought to the attention of the Police Department and an investigation was begun. An investigation of the matter was performed throughout the months from February 1984 to September 1984. During that time an examination was made of the books and records of Associated and discussions were held with the company accountant, several company employees, and Arkema.

In September of 1984 the Deputy Commonwealth's Attorney for Henrico County, Martin, held a meeting with McGhee and his attorney. At that meeting Martin and Vance explained that they would appear before a grand jury in Henrico County and ask for indictments against Shuman. The grounds for the indictments were reportedly based on evidence obtained by the independent investigation performed by the

Henrico Police Department and were in no way initiated by a request or suggestion by McGhee. Vance testified that communications and discussions with McGhee were not the substantial basis for his recommendation for indictments, but rather the independent investigation performed by Vance served as the grounds for the requests. As a result of testimony by Vance at the grand jury proceeding, 11 indictments were issued against Shuman. On September 11, 1984, Shuman was arrested pursuant to warrants that were issued by the aforementioned indictments.

The criteria to which a court must adhere in determining whether a judicial proceeding was instituted by or at the instance of the defendant is set out in Virginia case law and has been adopted by the Federal Courts. *Campbell v. Yellow Cab Co.,* 137 F.2d 918, 921 (3d Cir.1943); *Marsh v. Commercial and Savings Bank of Winchester, Virginia,* 265 F.Supp. 614, 619 (W.D.Va. 1967); *King v. Martin,* 150 Va. 122, 142 S.E. 358 (1928). In finding that judicial proceedings were not instituted by or at the instance of defendants, several courts have held that defendants that merely cooperated with the police authorities by providing them with information concerning a criminal investigation can in no way be considered to have "instituted judicial proceedings." *Campbell,* 137 F.2d at 921; *Marsh,* 265 F.Supp. at 619; *King,* 150 Va. at 122, 142 S.E. at 358. The Court in *Campbell* reflected this view when it recited the following facts:

> The evidence is uncontradicted that Barry did not cause the arrest of the plaintiff ... that he did not seek the continued detention of the plaintiff, did not request that the plaintiff be brought before the magistrate and did not press for the subsequent trial of the plaintiff. His sole role was to identify the plaintiff as one of the robbers. He at no time took the initiative. He at no time, either expressly or by indirection, directed, requested or exerted any pressure upon the police to proceed with the prosecution of the plaintiff.

*Campbell,* 137 F.2d at 921.

■ In the instant case, as previously stated, McGhee only contacted the police about the possibility of their investigating Shuman's suspicious conduct after being advised to do so by his attorney. From that point on it is uncontroverted that the entire investigation was conducted by the Henrico Police Department and that McGhee exerted no pressure or took no initiative to see that Shuman be prosecuted. The warrant for the arrest of Shuman was issued by the grand jury and, although the proceeding against Shuman was *nolle prossed,* thus meeting the second element of a malicious prosecution cause of action, it cannot be found that McGhee's actions constituted an initiation of judicial proceedings. However, even if it were possible to conclude that by his actions McGhee initiated the judicial proceedings against Shuman, sufficient evidence does not exist to show that McGhee lacked probable cause for doing so.

■ In a review of the question regarding the probable cause McGhee had to bring a judicial proceeding against Shuman, the applicable standard for determining probable cause is that a defendant must have "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind acting on such facts and circumstances that the plaintiff is guilty of the crime of which he is suspected." *Virginia Railroad and Power Company v. Klaff,* 123 Va. 260, 266, 96 S.E. 244, 246 (1918), *quoted in Bane,* 217 Va. at 394, 228 S.E.2d at 581. The knowledge the defendant must have is determined at the time the action complained of was taken. *Bane,* 217 Va. at 394, 228 S.E.2d at 581. At the time McGhee met with his attorney, and subsequently Detective Vance, he was acting on information received from Associated's certified public accountant, Howard Goode, and an employee of Associated, John Gavin, who was authorized to endorse company checks. The information that McGhee received from these men brought to his attention the fact that certain suspicious checks had been written by Shuman and that certain checks had been altered after Gavin had executed them at the request of Shuman.

At trial Gavin testified that he had advised McGhee that he never endorsed a check for $4,414 made payable to Shuman and that several other checks had also been altered by having Arabic numbers increased after he executed them. As evidence of the additional altered checks, Gavin testified that he never endorsed a check payable to Steven Meil, a truck driver of the corporation, for a sum in excess of thirty to forty dollars. McGhee also testified that he did not sign a check made payable to Republic Bank and Trust Company in an amount in excess of three or five hundred dollars. However, as Gavin informed McGhee, the same checks that he had signed for lesser amounts had been negotiated for greater sums.

In addition to learning of the altered checks, McGhee's inquiry into Shuman's conduct also led him to learn that an arrangement had been worked out between Shuman and Meil whereby Meil would be written a check by Shuman for an amount in excess of expenses incurred by Meil. Meil would cash these checks and return the surplus amounts to Shuman. Shuman claimed he was entitled to these sums due to expenses he had incurred but little evidence was provided to support these claims.

As a consequence of the information revealed to McGhee by Gavin and other sources while conducting an inquiry into Shuman's actions, it is clear that McGhee had sufficient knowledge at the time he contacted his attorney, and subsequently the Henrico Police Department, of a set of facts that give rise to a reasonable belief that criminal conduct had been committed by Shuman. Therefore, despite the existence of several plausable arguments presented by Shuman that rebut some of McGhee's allegations, this Court cannot find that the plaintiff has sustained its burden of proving that McGhee would have lacked probable cause for initiating criminal proceedings.

The plaintiff's failure to establish both that the defendant instituted proceedings against the plaintiff and that the defendant lacked probable cause, even if such proceedings had been instituted, results in the conclusion that McGhee did not act willfully or maliciously when contacting the police about Shuman's suspicious conduct. Consequently, the Court finds that the plaintiff has not proven by clear and convincing evidence that the actions by McGhee constitute "willful and malicious" conduct within the scope of 11 U.S.C. § 523(a)(6) and the plaintiff's request for judgment should be denied.

## COUNT TWO

In his second Count Shuman alleges that he "caused" BDI on his behalf to loan to Associated the sum of eighteen thousand dollars, eight thousand dollars of which was repaid by Associated with its corporate check made payable to BDI. An additional ten thousand dollar check was drawn on Associated's account and was also made payable to BDI. However, as a result of McGhee's suspicion of Shuman's conduct, McGhee placed a stop payment order on the two checks until an investigation could be made. The bank stopped payment on the ten thousand dollar check payable to BDI but mistakenly negotiated the eight thousand dollar check. As a result, a debt of ten thousand dollars is still owed to BDI.

Since Shuman has alleged in his complaint that a valid contract was in existence between himself and Associated and that McGhee wrongfully interfered with that contract, Shuman has stated a claim upon which relief can be granted. However, for Shuman to be granted relief he must prove that there was a valid enforceable contract between himself and Associated and that he has rights under that contract. *See, e.g., Power Distribution v. Emergency Power Engineering, Inc.,* 569 F.Supp. 54, 56 (E.D.Va.1983); *Farnsworth Cannon, Inc. v. Grimes,* 635 F.2d 268 (4th Cir.1980).

Based on the evidence presented, this Court is not satisfied that a contract existed between Shuman and McGhee for the repayment of the ten thousand dollar loan. Instead, it is clear that the contract to repay the loan existed solely between BDI and Associated. It is well established in Virginia that a corporation is a legal

person separate and distinct from the persons who own it and a stockholder has no standing to sue on his own right for an injury for a corporation. *Keepe v. Shell Oil Co.,* 220 Va. 587, 260 S.E.2d 722, 724 (1979); *see Womble v. Dixon,* 752 F.2d 80 (4th Cir.1984); *Abella v. Universal Leaf Tobacco Co., Inc.,* 495 F.Supp. 713 (E.D.Va. 1980). Shuman asserts that BDI is "a business of his own;" however, the established rule is that "an officer or a shareholder of a corporation, even if he is the sole shareholder, has no personal or individual right of action against third parties for a wrong or injury inflicted by those third parties upon the corporation." *Mullins v. First National Exchange Bank of Va.,* 275 F.Supp. 712, 721 (W.D.Va.1967); *see, e.g., Terry v. Yancey,* 344 F.2d 789 (4th Cir. 1965). Because the contract is between BDI and Associated, the injury that Shuman suffers arises only tangentially upon Associated's failure to pay BDI. Thus, Shuman's right to payment from BDI would not vest him with BDI's rights under the loan arrangement with Associated. As BDI's right to payment would be the only legal right interfered with in the case, BDI and not Shuman would be the proper party plaintiff in this proceeding.

Further, in the absence of an enforceable contract between Shuman and Associated, Shuman would appear to be at best a third party to a contract between BDI and Associated. In order to recover under a third party beneficiary theory Shuman would be required to show that the parties to the contract intended to bestow a direct benefit upon him before he would have standing to sue. *Valley Landscape, Inc. v. Rolland,* 218 Va. 257, 237 S.E.2d 120 (1977); *Professional Realty Corp. v. Bender,* 216 Va. 737, 222 S.E.2d 810 (1976); *see Va.Code Ann.* § 55–22 (1986 Repl.Vol.). Merely being the alter ego of one of the parties to a contract does not make a third party an intended beneficiary of the contract. The fact that Shuman would indirectly receive income through BDI would make him an incidental beneficiary, and as such he would have no standing to bring suit upon an alleged interference with a contract by

McGhee. *Valley Landscape,* 218 Va. at 260, 237 S.E.2d at 122.

Accordingly, for the reasons stated above, judgment must be entered in favor of Davis Ross McGhee with regard to this action.

An appropriate Order will issue.