**Dan Morrow WERTZ, bankrupt, Appellant,**

v.

**ROCK–OLA MANUFACTURING COMPANY, Appellee.**

No. 9089.

United States Court of Appeals Fourth Circuit.

Argued Nov. 13, 1963.

Decided Feb. 28, 1964.

**ALBERT V. BRYAN, Circuit Judge:**

Discharge in bankruptcy was refused Dan Morrow Wertz by the District Court on the objection of his principal creditor, Rock-Ola Manufacturing Corporation, upon the finding under § 14, sub. c of the Bankruptcy Act [1] that he had "committed an offense[s] punishable as provided under title 18, United States Code, Section 152". Specifically, he is found to have (1) "knowingly and fraudulently" concealed from his trustee and creditors "property belonging to the estate of [the] bankrupt", and (2) "knowingly and fraudulently" made "a false oath * * * in relation to * * * [the] bankruptcy proceeding * * *." Our judgment is that the evidence did not warrant a finding of fraud or intentional falsity.

"Property" not disclosed was a contingent or expectant interest in one half of the capital stock of Equipment Distributors, Incorporated, at Norfolk, Virginia; the oath branded false was his declaration in the Statement of Affairs that on the filing date of his petition, January 23, 1961, he was not employed.

The two objections arose in contemporaneous events. Wertz had been a distributor of coin machines in Richmond for Rock-Ola. This connection was terminated in 1960, followed by a judgment against him in favor of Rock-Ola. He was then employed as a branch manager in Norfolk, Virginia of a similar business owned by one O'Connor. Late in 1960 O'Connor notified Wertz of his intention to discontinue the Norfolk operation as of December 31, but offered to assist Wertz to carry it on for himself.

With this in mind Wertz approached his brother-in-law, Corvin, for financial backing. In December, 1960 Corvin agreed to advance $5,000.00 to a corpora-

Harry Frazier, III, Richmond, Va. (Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on brief), for appellant.

Angus H. Macaulay, Jr., Richmond, Va. (John P. Ackerly, III, and Denny, Valentine & Davenport, Richmond, Va., on brief), for appellee.

Before BRYAN and BELL, Circuit Judges, and CRAVEN, District Judge.

1. Section 14, sub. c, 11 U.S.C. 32, sub. c. (Supp.1963) provides: "The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment under section 152 of Title 18; * * *. *Provided*, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

tion designed to continue O'Connor's business, provided the corporation be organized as Corvin directed. His principal directions were: that the corporate officers be named by him; that all of the capital stock be owned by Corvin; that the corporation employ Wertz as general manager; and that on repayment of the advancement in two years with interest, Wertz would be entitled to receive one half of the capital stock of the new corporation.

At once Wertz went about arrangements to effectuate the plan. Counsel in Norfolk was consulted with regard to invoking the bankruptcy law to free his future prospects from the Rock-Ola judgment. This lawyer was also engaged by Wertz, or by both Wertz and Corvin, to obtain a charter and organize the proposed corporation. Meanwhile, in January, 1961 Wertz reached an agreement with the owner for the lease of the premises occupied by O'Connor, commencing on January 15, the expiration date of the O'Connor lease, and running until August 15. He wished to avoid any appearance of interruption of business at this location, so he might succeed to all benefits of the O'Connor operation. In the early part of January, O'Connor and Wertz collaborated to transfer the O'Connor inventory, along with a subdistributorship, to Equipment Distributors, the name selected for the proposed corporation. In January 1961—the day is not precisely fixed—Wertz obtained assignment to Equipment Distributors of the municipal business license issued to O'Connor, and applied for State and city slot machine operator's licenses.

January 23, 1961 was the filing date of the petition in bankruptcy. A charter for Equipment Distributors was sought and procured from the State Corporation Commission of Virginia January 24, 1961. Corvin on the same day deposited $5,000.00 to the credit of the new corporation, and all of its capital stock was issued to Corvin or his nominees. Wertz, not elected as a director or an officer, was designated general manager with authority to draw on the corporation bank account in order to conduct the business. Contrary to instructions of the officers, Wertz used some of the corporation money to settle his own income tax. He drew unappreciable amounts for living expenses throughout the remainder of January, 1961. A corporation check was drawn by him on January 26 for its rent.

Preparation and prosecution of the bankruptcy petition was the work of Richmond counsel aided by Wertz. The attorney (not of record on this appeal) talked with both the Norfolk counsel and Corvin before completing the schedules and other supporting papers. In answer to questions in these papers, Wertz did not list as property belonging to him the possibility open to him to gain an interest in Equipment Distributors. Furthermore, he categorically stated that he was not employed on January 23, 1961, the filing day of the petition.

The District Court determined, after searchingly dissecting the evidence, that this possible, future acquisition of corporate stock was actually property required to be reported, making the failure to list it a concealment of assets. It also determined that the circumstances just related did in truth constitute employment on January 23, 1961, rendering the negative response false. The Court found, too, that these answers were knowingly false and fraudulent.

■■ Certainly, as the Act [2] contemplates, the objecting creditor showed "reasonable grounds for believing that the bankrupt [had] committed * * *- the acts which * * * would prevent his discharge * * *." The proviso of § 14 then put the burden on Wertz of "proving that he [had] not committed any of such acts * * *." All the evidence, from whatever source, must be considered in determining whether Wertz met his obligation. To us the evidence clearly was not strong enough to establish that the bankrupt deliberately answered falsely and fraudulently. Put-

2. See statute in footnote 1.

positively, the evidence sustains his avouchment of an unawareness of falsity and an unconsciousness of guilt.

Despite his unavoidable bias, his testimony must be sensitively weighed because of the character in which the circumstances cast the questions and answers. Both demanded a personal opinion. Whether Wertz' conditional right to share at a future time in the corporation was in fact property posed a debatable point. The inquiry called for an appraisal by him of the immediate substantiality of this individual right. His answer necessarily was only his best judgment.

Too many factors kept the right from being anything but a chance or, at most, an opportunity to succeed. The bankrupt testified, as did his impoverished finances, that his present resources for exercise of the right were nil. He was not bound to repay the funds or to acquire the stock. He might change his preference or alter his career at any time, or without fault never attain the prize. Understandably such a distant, dim and tenuous privilege could be ignored as property.

Likewise, whether or not the activity of Wertz preparatory to his operation of Equipment Distributors was the equivalent of employment was a nice question requiring an answer equally refined. He may have been employed or he may have simply been occupied in perfection of his plans. Personal employment quite generally conveys the idea of serving for compensation. He had no job in praesenti although he had one in sight, a distinction not unknown to the unemployed.

But the petitioner's word was not his only reliance. Counsel, whose competency is not assailed, approved the answers—ordinarily, acceptable, affirmative proof of want of a fraudulent purpose. Thompson v. Eck, 149 F.2d 631 (2 Cir. 1945). Other facts, not here repeated, are said not to have been passed on to counsel. Even so, in our estimation they do not weaken the undisputed circumstances just outlined in giving a fair foundation in the bankrupt's mind and his lawyer's judgment for the bankrupt's answers.

Of course, the better advised and wiser course would have been to detail the answers with the addition of the objective facts on which each response was based, rather than to give bald statements of the petitioner's and attorney's personal deductions. Nevertheless, it cannot be said that these determinations were so far from actualities as preponderantly to evince fraud. The bankrupt's explanation, the nature of the interrogatories and answers in the circumstances and his attorney's advice sustained his burden, and compel us to say the contrary finding was clearly erroneous.

Reversed and remanded for entry of discharge.