In re Peter A. SCHULCZ, Jr. and Mary A. Schulcz, Debtors.

**William DAVENPORT, Plaintiff,**

v.

**Peter SCHULCZ, Jr., Defendant.**

Bankruptcy No. 1–86–03748.
Adv. No. 1–87–0027.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Oct. 28, 1987.

Al H. Huge, Jr., Cincinnati, Ohio, for plaintiff.

Peter Ulbrich, Cincinnati, Ohio, for defendant.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

In this adversary proceeding, plaintiff, a former employee of defendant/debtor, seeks dischargeability relief pursuant to 11

U.S.C. § 523(a)(6), willful and malicious injury to the person or property of another. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). A bench trial was held.

The facts we find are as follows. Plaintiff and defendant had had a long relationship, working together as co-employees for an enterprise whose employees sold meat and seafood products door-to-door. Plaintiff was an outstanding and successful salesman for this business. In May, 1984, defendant began his own business of the same kind under the name Ohio Valley Meat and Seafood Supply, together with a partner, John Campolongo. Plaintiff was hired by defendant as a salesman for the new enterprise. Plaintiff accepted the employment and continued his excellent performance with defendant.

There came a time in about June, 1985, when defendant and his partner decided to expand their operation into West Virginia. The opening of an office in West Virginia involved locating premises, preparing them for the conduct of the operation, including installing freezer equipment, hiring a secretary and locating and hiring drivers. Defendant and his partner Campolongo were involved in this process and spent appreciable time in West Virginia at the outset. They had proposed to plaintiff that he be their manager in West Virginia, and he had accepted. The West Virginia operation was actually opened June 22 or 23, 1985, with plaintiff as manager. The business proceeded in this fashion for a couple of weeks.

On about July 5 or 6, however, defendant and Campolongo had reached the conclusion that plaintiff's performance as manager would not do. They therefore, on July 7, 1985, called plaintiff into a motel room where they were staying and told him of their dissatisfaction. There is a difference of perception of this meeting by the participants. Defendant did not understand that he was severing his relationship with plaintiff at that meeting, but merely telling him that he would not be continuing as manager. Plaintiff, on the other hand, understood that his services were terminated and he left the meeting angrily.

Prior to the fateful interview on July 7, plaintiff on the preceding day had informed defendant that he had in his possession checks amounting to some $621.00 and cash amounting to something just under $600.00, $27.00 having been taken from the cash to pay for a motel for one of the salesmen.

At this point, the stories of the parties diverge. It is not necessary for us to resolve the fact conflicts they present, but only to notice them for purposes of resolving the ultimate issue in this proceeding. Plaintiff says that after leaving the conference, he went home. He says that he and his wife came to the office at approximately 5:30 the next morning, and that he placed in the cash box an envelope containing the checks and cash to which reference has been made. He cleaned out his desk, and left his truck in the parking lot. He and his wife then departed for Cincinnati. Defendant says that he came to the office early the next morning at approximately 7:00 a.m., found it locked and found that plaintiff's desk had indeed been cleared out. Upon his examination of the cash box, however, he did not find the cash there.

Defendant made an effort to find out what happened to the cash by phoning plaintiff's residence. The phone was answered by plaintiff's wife, who, motivated by anger at the treatment of her husband, hung up the phone when she understood who was on the other end of the line. Defendant then consulted counsel, who also tried to reach plaintiff, but only to be hung up on by plaintiff's wife. Defendant was advised by his attorney, who was admitted to practice in Ohio, but not West Virginia, to consult the authorities in West Virginia and be guided by their advice. Defendant did so. He was advised by the West Virginia prosecutor to bring proceedings by way of a charge of felonious embezzlement. Defendant directed the successor manager at the West Virginia office to sign a complaint to that effect. This was done. A warrant issued for plaintiff's arrest. An extradition warrant was issued, since plaintiff had returned to his home in Ohio.

Plaintiff then retained counsel, waived extradition, and returned to West Virginia, where he retained West Virginia counsel to represent him in the criminal proceeding. Finally, in the period between the issuance of the warrant and plaintiff's return to West Virginia, plaintiff and defendant had a telephone conversation which was taped by plaintiff and placed in the record at the trial. In the conversation on the tape, plaintiff denied any wrongdoing and sought defendant's view on how the matter could be resolved. Defendant stated that a certified check in the amount of some $1,200.00 would lead him to drop the West Virginia matter. Plaintiff declined this resolution.

The criminal charge came on for preliminary hearing on August 19, 1985 in West Virginia. The outcome of the hearing was a dismissal of the charges against plaintiff for lack of probable cause.

Plaintiff then initiated state court litigation against the present defendant, seeking redress for the criminal arrest which had been dismissed at the preliminary hearing stage. The state court suit was pending at the time defendant filed his bankruptcy case on October 21, 1986. Plaintiff subsequently filed the present proceeding covering essentially the same ground as the state court action.

As noted above, the present proceeding contends that defendant is indebted to plaintiff in an as yet undetermined amount, and such debt is nondischargeable because it is for willful and malicious injury of plaintiff by defendant, contrary to 11 U.S.C. § 523(a)(6). The phrase "willful and malicious" has been the subject of interpretation in innumerable cases. For us, the definitive interpretation of that phrase is to be found in the recently decided *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987). Our Court of Appeals aligns itself with those courts holding that the phrase in question refers to the intentional doing of an act that necessarily leads to injury. We accept the testimony of plaintiff that he suffered humiliation and anguish by reason of his arrest in West Virginia, and of being the subject of a criminal proceeding. We ac-cept as well his evidence that he suffered damage in incurring legal expense, as well as travel and other expense, so that there is no question that plaintiff suffered damage as a result of the sequence of events outlined in our foregoing findings of fact. Further, we accept plaintiff's position and reach the conclusion of law that the act of defendant in causing the commencement of a criminal proceeding against plaintiff in West Virginia was an intentional act.

But *Perkins* adds an additional factor which must be taken into consideration in determining whether a party is entitled to relief for injury caused by a willful and malicious act. The additional factor we are required to consider is whether there is just cause or excuse for the intentional act. 3 Collier on Bankruptcy (15th ed. 1986), 523-111. It is true and understandable that on July 7, 1985, emotions were running high between the parties to this proceeding. Plaintiff was angry because he believed he was being discharged and thought there was no reason for that to happen. He left the July 7, 1985 meeting precipitously, and left West Virginia the next morning very early. Defendant the next day also had cause for high emotion, for he had no explanation for the disappearance of a sum of money which belonged to his business. He knew that it had been in plaintiff's possession, and plaintiff admits that. While plaintiff testified that he placed the money in a cash box in the office, defendant testified that he did not find it there. We know of no reason to disbelieve the latter testimony. The evidentiary record in this case does not answer the question of what happened to that money. That being the case, it was not irrational for defendant to believe that plaintiff had it. Even if defendant had been able to make telephone contact with plaintiff when he called, and if plaintiff had said that he had left the money in the office, it would not have been irrational for defendant to disbelieve that. We hold that the fact that defendant believed that plaintiff had decamped with funds belonging to defendant's company constitutes an excuse for defendant's intentional act of instigating a criminal prosecution against plaintiff.

Just as in *In re Simmons*, 17 B.R. 259 (Bankr.N.D.Ga.1982), it is not sufficient to make plaintiff's case that the criminal charge brought against him at defendant's instance was dismissed for lack of probable cause. That event does not establish that there was no "just cause or excuse", for this is a factor we must independently evaluate. The long-standing acquaintanceship and business relationship between the parties is not enough to establish the absence of "just cause or excuse." Defendant believed that a very emotional, disgruntled employee was withholding a fund which belonged to his business. This does, we hold, provide just cause.

■ Plaintiff sought in this case to show that he was entitled to judgment by relying upon malicious prosecution cases decided in the courts of the State of Ohio, an approach which we hold to be unsound. Plaintiff's assumption was that if he made out a case of malicious prosecution, he would be entitled to relief by way of a holding of nondischargeability for willful and malicious injury to person or property as contrary to 11 U.S.C. § 523(a)(6). Extremely relevant in plaintiff's view is the first syllabus in *Woodruff v. Paschen*, 105 Ohio State 396, 137 N.E. 867 (1922). That syllabus reads: "1. The essential elements of fact involved in an act for damages for malicious prosecution are malice and the presence, or absence, of probable cause." See also, *Melanowski v. Judy*, 102 Ohio State 153, 131 N.E. 360 (1921). It is a fact that at the preliminary hearing held in West Virginia, the outcome was "no probable cause found, defendant and bond discharged." *

The *Melanowski* case states at p. 155–156, 131 N.E. 360:

What constitutes probable cause has been defined by this court in the early case of *Ash v. Marlow*, 20 Ohio 119. It

is there defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." This was substantially the definition given by Mr. Justice Washington, in *Munns v. DuPont DeNemours & Bauduy*, 3 Wash. 31.

■ The flaw in plaintiff's rationale is two-fold. First, even if we were to hold that the proof of a case of malicious prosecution under the law of the State of Ohio suffices to make out a cause of action for willful and malicious injury to person under § 523(a)(6), it cannot be said that the naked holding from the document in West Virginia would be acceptable to prove such a want of probable cause as would suffice to prove a case of malicious prosecution in Ohio, given the requirement of the definition quoted above.

Secondly, this is not a suit for malicious prosecution, but rather one arising in a federal bankruptcy court specifically grounded upon 11 U.S.C. § 523(a)(6). As to such a case we are bound by the *Perkins* case, *supra*. *Perkins* does not speak in terms of probable cause, but incorporates as part of the test for a holding of nondischargeability that there not have been just cause or excuse for defendant's act. Even assuming arguendo that that element in *Perkins* is equivalent to the probable cause element of a state malice prosecution suit, we are bound to make our own findings and conclusions as to this element, particularly where the significance of the holding in the state court is unclear, as is the case here. The conclusion of "no probable cause", it has been justifiably suggested in the present case, could amount to no more than the belief by the judicial officer in charge that the dispute between the charg-

---

* At the trial, plaintiff offered into evidence Plaintiff's Exhibit 3, consisting of an affidavit by the attorney who represented plaintiff at the preliminary hearing in West Virginia. We said at the trial that such affidavit was inadmissible and we here reaffirm that holding. There was, however, attached to the affidavit a document entitled "Case History". The above conclusion appears on that document. The document bears a Certification by Clerk, upon which is the imprint of a seal. At the trial, we reserved decision as to the admissibility of this document over the objection by the defendant. We now hold such document to be admissible as a certified copy of a public record. See Federal Rule of Evidence 902(4).

ing party employer and the defendant employee ought to be settled as a civil matter and was not consequential enough for a criminal proceeding. The foregoing explains our conclusion that plaintiff's reliance upon the brief record in the West Virginia court will not suffice to make out his case here.

Accordingly, we reach the conclusion that plaintiff has failed to sustain his burden in this case, and the complaint must be dismissed.

So Ordered.