In re Albert R. ZACK, Jr., Debtor.

COWHER'S TRUCKING, INC. and Robert Cowher and Diane Cowher, Plaintiffs,

v.

Albert R. ZACK, Jr., Defendant.

Bankruptcy No. 85–01871–A.
Adv. No. 86–0004–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

May 8, 1989.

Darwyn H. Lesh, Manassas, Va., for debtor.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This adversary proceeding is before the Court on the plaintiffs' complaint to determine the dischargeability of certain alleged debts pursuant to sections 523(a)(2)(A),[1] 523(a)(4)[2] and 523(a)(6)[3] of Title 11 of the United States Code (hereinafter "Bankruptcy Code").[4]  For the reasons set forth below, we find for the defendant.

1. Section 523(a)(2)(A) provides:

    (a) A discharge under section 727, 1114, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    . . . .

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

    11 U.S.C. § 523(a)(2)(A).

2. Section 523(a)(4) provides:

    (a) A discharge under section 727 . . . of this title does not discharge . . . any debt—

    . . . .

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

    11 U.S.C. § 523(a)(4).

3. Section 523(a)(6) provides:

    (a) A discharge under section 727 . . . of this title does not discharge . . . any debt—

    . . . .

    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

    11 U.S.C. § 523(a)(6).

4. In their adversary complaint, the plaintiffs incorporate by reference an action filed against several defendants, including the debtor, in the Superior Court of New Jersey, Law Division, Burlington County on January 6, 1986.  Docket No. L–78997–83.  The complaint alleged breach of the contract between Albert Zack and the plaintiffs and seeks specific performance, or in the alternative recision and restitution.  The complaint also alleged conversion and again seeks recision and restitution.  Finally, the complaint alleged a malicious prosecution and sought compensatory and punitive damages as well as attorney's fees.  Although a default was entered, the default was never reduced to judg-

Albert R. Zack, Jr. filed a petition for bankruptcy in this Court on October 11, 1985. Cowher's Trucking, Inc., Robert Cowher and Diane Cowher jointly filed this adversary proceeding against Albert R. Zack, Jr. on January 6, 1986. The matter came to trial on November 5, 6, and 7, 1986. At the trial, the Court dismissed Cowher's Trucking, Inc. as a party plaintiff.[5] Also at the trial, the Court dismissed the section 523(a)(4) claim against the debtor/defendant. Remaining for decision are the section 523(a)(2)(A) and section 523(a)(6) counts brought by Robert Cowher and Diane Cowher (hereinafter "plaintiffs") against Albert J. Zack, Jr. (hereinafter "defendant" or "Zack").

In April 1983, Diane Cowher orally agreed to purchase a truck from Albert Zack. The dispute in this case arises over the terms of the oral purchase agreement. Specifically, the controversy centers around whether the agreement was to be an outright purchase or a lease purchase arrangement. The plaintiffs assert that Diane Cowher had agreed to an outright purchase and not a lease purchase.

Diane Cowher took possession of the truck in April 1983. After taking possession of the truck, Mrs. Cowher demanded but did not receive title to the truck from Zack or from the trucking dispatch company, Progressive Pier Delivery,[6] that provided her with delivery assignments. Mrs. Cowher then sought legal advice and based on the advice of her attorney, she drove the truck to a hiding place, parked it there and refused to reveal its location to Zack or Progressive Pier Delivery. After two months, Diane Cowher put the truck back on the road. She resumed deliveries yet still refused to reveal to Zack the location of the truck. Six weeks later, Diane Cowher was stopped by New Jersey police authorities and arrested for possession of a firearm without a license, for possession of controlled substances and for transporting stolen goods. The first two charges eventually were dropped and the later charge no-billed by the New Jersey grand jury.

Diane Cowher now claims that the debtor, Albert Zack has defrauded her by not complying with the terms of the oral purchase agreement and by purporting to sell a truck for which he did not have title. Furthermore, she claims that Zack was responsible for the arrest and that her injury resulting from the arrest was a wilful and malicious injury. She seeks to have both debts declared nondischargeable.

The testimony at trial revealed that Diane Cowher approached Albert Zack with the intent of purchasing a truck. They subsequently met and discussed such a purchase. On a second occasion, both Diane and Robert Cowher, her husband, met with Zack. At this second meeting, Diane Cowher entered into an agreement to purchase a 1982 Freightliner truck from the defendant at which time she transferred to the defendant a cashier's check in the amount of $3,500.00. Her testimony revealed that she understood she was buying a truck, that she would have to make pay-

ment. However, had there been a judgment by the New Jersey Superior Court, this Court would not be bound by collateral estoppel as the issues were not actually litigated in the prior case. *See Combs v. Richardson,* 838 F.2d 112, 114 (4th Cir.1988).

5. Cowher's Trucking, Inc. was not in existence at the time of the transaction with Albert Zack, Jr. and therefore could not claim that it transferred money, property or services based on the false pretenses, false representations or actual fraud of Albert Zack, Jr. in accordance with section 523(a)(2)(A). In addition, Cowher's Trucking, Inc. could not claim any willful and malicious injury resulting from a malicious prosecution because it was not the subject of any prosecution in accordance with section 523(a)(6).

6. Progressive Pier Delivery leased several trucks from Al Zack, including the 1982 Freightliner that is the subject of this action. Under the arrangement, Progressive Pier Delivery would provide a load for delivery to the west coast to Diane Cowher. Upon completion of the trip, Zack's company, Progressive Produce Delivery, would provide a load for delivery to the east coast. Upon completion of each trip, Progressive Pier Delivery would provide Diane Cowher with a settlement sheet, which reflected a deduction for her truck payments and provided her with the difference. Zack was the lessor of the 1982 Freightliner truck, but did not specifically deduct her payments or prepare her settlement sheets.

ments on the truck over a 36–month period and that part of her payments would cover a form of insurance, although she did not know the amount or the extent of the insurance. She further testified that the defendant Zack represented to her that "title would be given to [Diane] right away, with [Zack] as lienholder" and that, in fact, Zack talked with her about "ownership papers." She stated that she did not know "when you buy a truck if you get a sales contract or not." However, she remembered that Zack talked with her "about ownership papers, registration, whatever I was supposed to get with buying a truck." In addition, her understanding was that she would pick up the truck at Washington Freightliner, a dealership in Maryland, where it would be serviced and "anything that was wrong with it would have been taken care of." After delivery, she understood that she would be given at least two cross-country assignments each month. She testified that Zack was to be a lienholder on the truck. She was aware of the cost of a truck and that she could not afford the ordinary down payment on a truck. She could afford, however, to purchase a truck under the terms of the agreement with Zack. She was also aware that an ordinary purchase of a truck required financing but that the arrangement through Zack required monthly payments without finance charges or interest charges. Diane Cowher testified that she did not remember asking any questions but merely accepted the agreement as described by Zack.

Robert Cowher testified that he was present during a meeting of Diane Cowher and Albert Zack, and that he understood that the Cowhers were to pay a single figure of $2,200 for 36 months in order to purchase the truck. He also testified that he understood that title was to be placed in Diane's name with Albert Zack noted as a lienholder, although he did not know in fact who the owner of the truck was at the time the Cowhers met Zack and agreed to its purchase.

The plaintiff's co-driver and witness, Michael Rogers, testified that he understood that Diane Cowher was buying one of Albert Zack's trucks and that when the truck was paid for, Diane would get title to the truck.

The plaintiffs testified that they understood that Zack was to deliver title to the truck to them, and that they had attempted to acquire the title from him without success. However, as indicated above, this was not in accord with the plaintiffs' own witness, Michael Rogers, whose testimony, as stated above, indicated otherwise. The Cowhers sought legal advice regarding how to acquire the title they believed was being wrongfully withheld from them. They testified that their attorney suggested to them that they could take the truck and hide it in order to pressure Zack into delivering the title to them. On August 17, 1983, the Cowhers did secrete the truck and never revealed to Zack where the truck was located during that time. Subsequently, in October of 1983, Diane Cowher resumed operation of the truck, but would have "nothing to do with [Zack]." She never resumed payments on the truck. In response to cross-examination asking how she expected Zack to enforce his right to payments on the truck, the plaintiff, Diane Cowher, stated "I thought he would get the truck or not give me loads...."

On December 6, 1983, the New Jersey police stopped the plaintiff, Diane Cowher, and then arrested her for possession of a firearm without a license, for possession of controlled substances and for receiving stolen property, namely the 1982 Freightliner truck. She was confined, strip searched, and later released on bail. On January 24, 1984, the plaintiff received notice that the New Jersey grand jury no-billed the charges of receiving stolen property. However, the other two charges remained pending until October 1984 when they were dismissed as a result of her participation in a pretrial intervention program run by the courts in Burlington County, New Jersey where she had been arrested.

The plaintiff's evidence shows that Diane Cowher's arrest was made by the New Jersey authorities and that Progressive Pier Delivery, a trucking dispatch company with whom Zack did business, reported the truck as stolen. The record reveals that

Zack made an arrangement with the truck driver, who was a former employee of Zack, whereby Zack agreed to let him purchase the truck, if he were able to locate it. The plaintiff testified that this driver was present at the scene of the arrest and identified her to the New Jersey authorities. Thus, the plaintiff argues, Zack caused the arrest by acting through agents. As set forth below, we find .that the plaintiffs have not shown by a preponderance of the evidence that the defendant, Albert Zack, obtained any money, property or services by false pretenses, false representation or actual fraud. We find also that the plaintiffs have failed to prove by a preponderance of the evidence that the defendant willfully and maliciously injured the plaintiffs through the arrest and temporary confinement of Diane Cowher.

■ Exceptions to discharge are to be construed narrowly. *In re Belfry,* 862 F.2d 661, 662 (8th Cir.1988) (citing *In re Black,* 787 F.2d 503, 505 (10th Cir.1986)), *see also In re Preston,* 47 B.R. 354, 357 (E.D.Va.1983); *Sweet v. Ritter Fin. Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967) (citing *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)). The burden of proving that a debt falls within a statutory exception is on the party opposing discharge. *Belfry,* 862 F.2d at 662 (citing *Black,* 787 F.2d at 505), *In re Couch,* 100 B.R. 802, 808 (Bankr.E.D.Va.1988); *In re Ball,* 84 B.R. 410, 414 (Bankr.D.Md.1988). The standard of proof in a dischargeability proceeding is the same as that normally applied in a civil hearing. *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988). The standard of proof in civil proceedings is generally a preponderance of the evidence. *See In re Watkins,* 90 B.R. 848, 856 (Bankr.E.D.Mich.1988) (civil case typically involves a monetary dispute between parties where the litigants share the risk of error in a roughly equal fashion, burden of proof is thus by a mere preponderance of the evidence). However, the standard of proof where fraud is alleged is clear and convincing evidence. *Oriel v. Richardson,* 278 U.S. 358, 362–63, 49 S.Ct. 173, 174, 73 L.Ed. 419 (1929); *Lissmann v. Hartford Fire Ins. Co.,* 848 F.2d 50, 53 (4th Cir.1988); *Huntley v. North Carolina State Bd. of Educ.,* 493 F.2d 1016, 1019 (4th Cir.1974). Thus, we hold for the purposes of a dischargeability claim, that the plaintiff must prove fraud by clear and convincing evidence and all other elements of the dischargeability claim by a preponderance of the evidence. We find in this case, however, that the plaintiff has not proven her complaint by either a preponderance of the evidence or clear and convincing evidence.

■ Under section 523(a)(2)(A), an objecting creditor must prove that the debt was obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 124 Cong.Rec. H11095–96 (daily ed. Sept 28, 1978); S17412 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini). The frauds included in section 523(a)(2)(A) are those which in fact involve moral turpitude or intentional wrong. *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Nahas,* 92 B.R. 726, 727 (Bankr.E.D.Mich. 1988); *In re Stelweck,* 86 B.R. 833, 846 (Bankr.E.D.Pa.1988); *see In re Pisacano,* 86 B.R. 277, 279 (Bankr.M.D.Fla.1988) (distinguishing between fraud in fact and fraud implied in law); *Preston,* 47 B.R. at 357. A dischargeability complaint under section 523(a)(2)(A) may not rest on suspicious circumstances alone. *Stelweck,* 86 B.R. at 849, *see In re Wyatt,* 87 B.R. 874, 879 (Bankr.E.D.Va.1988) (circumstances may raise suspicion but fail to carry a plaintiff's burden of proof). The creditor must show that the debtor intended to deceive and knowingly and fraudulently made representations upon which the creditor relied to his detriment. *In re Miller,* 57 B.R. 52, 53 (Bankr.D.S.C.1985); *see Hunter,* 780 F.2d. at 1579 (listing elements that objecting creditor must show); *Preston,* 47 B.R. at 357; *In re Showalter,* 86 B.R. 877, 880 (Bankr.W.D.Va.1988). Failure to prove one of the elements of fraud and deceit is fatal to recovery. *Miller,* 57 B.R. at 53.

First, the objecting creditor must show affirmatively that false representations were knowingly made. *In re Nahas,* 92

B.R. at 727. A false representation does not include a mere promise to be executed in the future, even though the promise is subsequently breached. *Id.* Neither representations of fact that will exist in the future nor mere promises, although false and intended to deceive, afford the basis of actionable fraud. 3 *Collier on Bankruptcy,* ¶ 523.08 at 523–54 (15th ed. 1988).

In addition, the creditor must show an intent to deceive. *Gabellini v. Rega,* 724 F.2d 579, 581 (7th Cir.1984); *In re Pascucci,* 90 B.R. 438, 445 (Bankr.C.D.Cal.1988); *In re Stivers,* 84 B.R. 852, 854 (Bankr.S.D. Fla.1988). The intent to deceive must exist from the beginning of the transaction. *Pascucci,* 90 B.R. at 445; *In re Wood,* 75 B.R. 308 (Bankr.N.D.N.Y.1987); *In re Criswell,* 52 B.R. 184, 200 (Bank.E.D.Va.1985). Negligence, recklessness or constructive intent is insufficient to meet the intent to deceive criteria.[7] *See Pascucci,* 90 B.R. at 444.

Finally, the creditor must show that the representation was a significant factor in the extension of credit, in the absence of which the extension would not have been made. *In re Adelman,* 90 B.R. 1012, 1022 (Bankr.D.S.D.1988). Or, in other words, "the action of the debtor was the act, without which the claimant would not have suffered the loss complained of." *Adelman,* 90 B.R. 1022 (citations omitted), *see Preston,* 47 B.R. at 357 ("Reliance on statement must be to the prejudice of the creditor."), *Ritter Fin.,* 263 F.Supp. at 543 ("[T]he alleged loss and damages [must be] the proximate result of the representation having been made.").

It is undisputed that Robert Cowher did not enter into the purchase agreement with Albert Zack. It is also undisputed that Robert Cowher did not transfer any money, property or services to the defendant Zack. Accordingly, Robert Cowher cannot assert a claim against the said defendant for mon-ey, property, services or credit obtained by false pretenses, false representations or actual fraud. Therefore, the complaint brought by Robert Cowher to deny the dischargeability of the alleged debt pursuant to section 523(a)(2)(A) will be dismissed.

■ Turning to the other plaintiff, Diane Cowher, the evidence reveals that there was a payment of $3500 by the plaintiff, and in return the debtor undertook an obligation to deliver a truck, to provide repairs to the truck and to deliver title to the truck. The evidence also shows that title was to be placed in her name, sometime after the initial transaction, but the exact time for the transfer of title has not been established. We find that Albert Zack did provide Diane Cowher with the 1982 Freightliner truck, and that Zack did provide two cross-country round trips each month for Diane Cowher, that he was told of some necessary repairs to the truck but that otherwise the truck was in working condition upon delivery, and that he did provide some insurance on the truck.

The testimony of the debtor shows that the debtor could not deliver the title at the time of the initial transaction because he was still making payments on the truck; he would receive title to the truck after he completely paid off the lien on the truck. However, there is no evidence that the debtor represented in fact that he would deliver title to the truck at the time of the initial transaction. Instead, it is unrefuted that the title would be delivered at some time after the plaintiff took possession of the truck. Furthermore, even if the debtor had represented that he would deliver title to the plaintiff at or near the time of the initial transaction, there is no proof that the plaintiff relied on this representation in entering into the transaction. The evidence shows that the plaintiff entered into the transaction because the initial down payment and the subsequent monthly pay-

---

7. The 11th Circuit has held that "reckless disregard for truth or falsity of a statement constitutes a 'false representation' under section 523(a)(2)(A)." *Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir.1985). However, the recklessness must exceed negligence and rise to the level of reckless disregard for truth. Such recklessness usually is determined by a pattern of conduct. *See In re Hamm,* 92 B.R. 386, 388 (Bankr.W.D.Mo.1988). As shown below, the plaintiff in this case presented no proof of a pattern of reckless conduct from which to infer that his statements were in reckless disregard of the truth.

ments were affordable. The record is devoid of any evidence that the plaintiff entered into the transaction, thereby incurring the debt that is the subject of this action, based on any alleged representation regarding when the defendant would deliver the title to the truck. Assuming Zack promised to deliver title to the truck at the time of delivery or at a time certain, the result is a dischargeable breach of contract or breach of warranty. Furthermore, there is no evidence from which to infer that Zack had an intent to deceive at the time of the initial transaction. On these facts, we find that the plaintiff, Diane Cowher, has not proven that the defendant obtained money, property, services or credit by false pretenses, a false representation or actual fraud. Accordingly, the plaintiff's request for an exception to discharge based on section 523(a)(2)(A) is denied. *See In re Cochran*, 90 B.R. 523, 525 (Bankr.M.D.Fla.1988) (defendant falsely represented his right to sell property but no proof that defendant knew representation was false or made with intent to deceive); *In re Peisker*, 62 B.R. 9, 10 (Bankr.E.D.Va.1986) (transfer of truck by defendant who did not hold title to truck found not to be fraudulent or made with an intent to deceive).

The plaintiffs also assert section 523(a)(6) as a basis to deny the dischargeability of the defendant's debt. The plaintiffs again have not proven by a preponderance of the evidence their claim for an exception to discharge. They have not proven the existence of a debt owed to them based on a willful and malicious injury caused by the defendant Zack.

The Cowhers claim that the arrest caused harm to both plaintiffs and that the arrest was a willful and malicious act. Hence, they claim their injury is a debt which should be declared nondischargeable under section 523(a)(6) of the Bankruptcy Code. As indicated below, the plaintiffs have failed to prove by a preponderance of the evidence that Zack initiated the arrest. Furthermore, they have not established that Zack lacked probable cause, just cause or excuse to report the theft. Finally, there is no proof that their injury was the result of the specific arrest based on the charges relating to the truck.

Robert Cowher cannot maintain an action for injury resulting from a willful and malicious prosecution where he was not the subject of the prosecution. Accordingly, the complaint brought by Robert Cowher based on injury from willful and malicious arrest under section 523(a)(6) is dismissed.

Next we turn to the claim of the other plaintiff, Diane Cowher. In order to prevail in a malicious prosecution action, she must prove the following elements: (1) the prosecution was brought by or with the cooperation of the defendant; (2) the prosecution ended in a manner favorable to the plaintiff; (3) the defendant was without probable cause in bringing the action; and (4) the action was brought by the defendant with malicious intent. *In re McGhee*, 80 B.R. 65 (Bankr.E.D.Va.1987) (citing *Bill Edwards Oldsmobile Inc. v. Carey*, 219 Va. 90, 96; 244 S.E.2d 767, 771 (1978); *Niese v. Klos*, 216 Va. 701, 703; 222 S.E.2d 798, 800 (1976)). Where a defendant merely cooperates with police authorities by providing them with information concerning a criminal investigation, the defendant has not "instituted judicial proceedings." *McGhee*, 80 B.R. at 68, (quoting *Campbell v. Yellow Cab Co.*, 137 F.2d 918, 921 (3rd Cir.1943)); *Marsh v. Commercial and Sav. Bank of Winchester*, 265 F.Supp. 614, 619 (W.D.Va.1967); *King v. Martin*, 150 Va. 122, 122, 142 S.E. 358, 358. Furthermore, for a debt to be excepted from discharge under section 523(a)(6), both willful and malicious elements must be shown. *In re Brubaker*, 57 B.R. 736, 739 (Bankr.W.D.Va.1986); *see St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1008 (4th Cir.1985) (special malice not required, although finding of at least implied malice is required); *American Honda Fin. Corp. v. Loder*, 77 B.R. 213, 215 (N.D.Iowa 1987) (finding that conversion was willful not sufficient to support exception to discharge absent proof conversion was malicious). The term "willful" as used in section 523(a)(6) means deliberate or intentional. H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5865, 6320–6321. The defendant must intend to do the act but not

necessarily intend to cause the specific injury. *In re Nuckols*, 47 B.R. 731, 735 (Bankr.E.D.Va.1985). An act is malicious if it is without just cause or excuse, even in the absence of personal hatred, spite or ill will. *In re Fussell*, 15 B.R. 1016, 1022 (W.D.Va.1981), *Brubaker*, 57 B.R. at 739; *Nuckols*, 47 B.R. at 735, see *In re Long*, 774 F.2d 875, 881 (8th Cir.1985) (malice must be proven separately from willfulness and must meet a higher standard of culpability than recklessness). Where a defendant believes that plaintiff is wrongfully withholding property of his business and will not return it, the defendant is said to have just cause or excuse to instigate a criminal investigation, even if the subsequent prosecution later is abandoned for lack of probable cause. *In re Schulcz*, 79 B.R. 726, 729 (Bankr.S.D.Ohio 1987). Where defendant believed that plaintiff was involved in suspicious conduct, sought an attorney and subsequently sought a police investigation, defendant was found to have just cause and excuse for the prosecution even though the charges were *nolle prossed*. *McGhee*, 80 B.R. at 66.

In the present case, the plaintiff testified that she took the truck off the road and hid it from the defendant. She refused to make payments on the truck at any time after she secreted the truck. She also refused to provide trucking services for the defendant during this period of time, even though she knew that payments were due on the truck.

The plaintiff's evidence shows that Albert Zack made an arrangement with a former employee to help him locate the truck. The plaintiff argues that the former employee was, by the arrangement with Zack, acting as Zack's agent, and that he caused the arrest by participating with the New Jersey authorities. Even if the Court accepts the plaintiff's argument, the plaintiff cannot maintain her claim for an exception to discharge because the plaintiff has failed to adduce any evidence that the arrest was malicious. There is no evidence that Zack lacked probable cause for the arrest. Instead, the plaintiff's own evidence shows that Zack did have probable cause to initiate the arrest. Both Diane and Robert Cowher testified that they hid the truck from Zack, withheld payments on the truck and refused to reveal the location of the truck. Thus, the plaintiff's evidence establishes that the plaintiff gave the defendant just cause for his actions. The plaintiff's own testimony shows that she believed that Zack could repossess the truck in order to enforce his payments on the truck.

In addition, the plaintiff, Diane Cowher, has failed to prove the injury resulting from the alleged malicious actions of the defendant Zack. The plaintiff has not established that the arrest and the confinement resulted from the report of the stolen truck rather than from the charges relating to possession of a gun without a license or possession of controlled substances.

Based on the foregoing, this Court concludes that Robert Cowher cannot sustain his complaint based upon §§ 523(a)(2)(A) or 523(a)(6) of the Bankruptcy Code, and that the remaining plaintiff, Diane Cowher, has failed to establish even by a preponderance of the evidence that the debts allegedly owed under sections 523(a)(2)(A) and 523(a)(6) of the Code are nondischargeable. Accordingly, the plaintiffs' request for attorney's fees is denied.

An appropriate order will enter.