**In re James M. PAPPAS, Debtor.**

**CHARLES CHIPS OF VIRGINIA, INC., Plaintiff,**

v.

**James M. PAPPAS, Defendant.**

**Bankruptcy No. 7–88–01069–BKC–HPR. Adv. No. 7–88–0205.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Oct. 13, 1989.

Alex N. Apostolou, Lutins & Shapiro, Roanoke, Va., for debtor/defendant.

Easter P. Moses, Roanoke, Va., for plaintiff.

### MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Chief Judge.

The issue before the court is whether the debt in issue is nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A).

The facts are as follows: In 1984, James M. Pappas ("Debtor") entered into a subdistribution agreement with R & M Distributing Company ("R & M") to sell Charles Chips potato chips and snack foods in and around Roanoke, Virginia. Debtor would routinely place orders for merchandise which R & M would deliver to the debtor's Roanoke location. Payments for the goods received were made generally from 15 to 60 days after delivery. In 1985, R & M was purchased by Charles Chips of Virginia, Inc. ("Charles Chips, Inc."), a Virginia Corporation similarly engaged in the distribution of snack foods.. As part of the corporate transaction, Charles Chips, Inc., assumed the subdistributions agreement R & M previously entered into with the Debtor.

At the time Charles Chips, Inc., assumed R & M's operations, Debtor's account was past due. Consequently, Anthony Puccinelli ("Puccinelli"), the president of Charles Chips, Inc., advised the Debtor to bring his account current and to pay for future orders of merchandise within fifteen days of delivery. Debtor agreed to abide by these more restrictive terms without objection.

In September and October of 1986, Debtor began to experience serious cash flow problems resulting in the return of checks he had written to pay for merchandise because of insufficient funds. Upon receiving notice of the bad checks, Debtor deposited funds in his account sufficient to cover the checks when they were resubmitted. Debtor's business remained in dire financial condition however. His recent purchase of a truck and other new equipment to expand his sales contributed to his financial difficulties. To alleviate his immediate financial problems, Debtor took out a bank loan of $10,709.63 in October 1986 to satisfy his outstanding balance with Charles Chips, Inc. In a letter dated November 7, 1986, Puccinelli acknowledged receipt of Debtor's payment. Puccinelli also put Debtor on notice of a new policy effective immediately whereby Charles Chips, Inc., would "hold" any orders for merchandise if the Debtor's account was past due. Furthermore, the letter stated "any bad checks we receive will also stop your shipments plus it must be replaced by a cashiers check or guaranteed funds."

From the time of the aforementioned letter through the first six months of 1987, ten checks executed by the Debtor in favor of Charles Chips, Inc., were returned because of insufficient funds. During this

time, Charles Chips, Inc., did not halt shipment of merchandise to the Debtor, nor did it require him to replace the bad checks by a more secure form of payment as stated in the letter of November 7, 1986. The evidence showed that Charles Chips, Inc., would routinely submit the checks a second time in order to give the debtor an opportunity to deposit funds in his bank account to cover the checks.[1]

In late July 1987, Debtor sent Charles Chips, Inc., a check in the amount of $3,020.63 to pay for merchandise previously shipped to him. On July 28, 1987, the check was returned because of insufficient funds. After being notified of the bad check, Debtor deposited additional funds in his bank account to allow the check to be paid when it was resubmitted. It was at this time that Puccinelli, concerned about the Debtor's past and present financial problems, telephoned Debtor and advised him that Charles Chips, Inc., would not provide him with any more merchandise unless his account was promptly paid and he kept sufficient funds in his bank account.

In response, Debtor promised to keep his account with Charles Chips, Inc., current and to maintain a sufficient level of funds in his bank account to allow checks to be paid when initially submitted. Debtor also expressed the desire to expand his operation and make his distribution network more efficient. Encouraged by the Debtor's positive attitude, Puccinelli testified that he was more lenient in working with him and trying to help him out.

On August 10, 1987, pursuant to the Debtor's request, Charles Chips, Inc., delivered an order in the amount of $3,565.92. On August 24, 1987, Debtor received another shipment which he had ordered in the amount of $3,802.15. Debtor proceeded to place a third order with Charles Chips, Inc., on September 4, 1987. Not yet having received payment on the August 10 order, Charles Chips, Inc., refused to provide the Debtor with any additional merchandise un-

til he paid for the August 10 shipment. Debtor subsequently executed check No. 1475 on September 4, 1987, in the amount of $3,515.00 to cover the August 10 shipment. Once Charles Chips, Inc., received the check, they delivered the order placed on September 4, 1987. That order, with a value of $4,565.71, was delivered on September 5, 1987.

On or about September 16, 1987, Debtor tried to order more merchandise from Charles Chips, Inc. During this time the August 24 order had come due. Puccinelli advised the Debtor that he could not order any additional merchandise until he "cleaned up his account," that is, paid the amount past due. Additionally, Puccinelli informed Debtor that he could only purchase merchandise less than or equal to the amount of payments on his prior orders. No mention was made of the Debtor making his payments by cashiers check.

On September 19, 1987, Charles Chips, Inc., received check No. 1489 from the Debtor in the amount of $3,802.15. Upon receipt of this check, Charles Chips, Inc., delivered additional merchandise to the Debtor valued at $3,802.60. Shortly thereafter, on or about September 20 or 21, check No. 1475 was returned to Charles Chips, Inc., because of insufficient funds. To make matters worse, check No. 1489 was returned to Charles Chips, Inc., on October 2, 1987, after Debtor had stopped payment on it. The evidence showed that Debtor stopped payment on check No. 1489 when he discovered that his bank had drafted his account to pay and offset its own charges and delinquencies, leaving little money left to pay the check. Debtor notified Charles Chips, Inc., of why he stopped payment on check No. 1489, but the company responded by writing Debtor a letter cancelling its sub-distributorship to the Debtor.

Charles Chips, Inc., subsequently instituted civil proceedings against the Debtor in General District Court for the City of Roanoke on October 2, 1987, on check No.

---

1. Debtor had an arrangement with his bank whereby the bank would cover the Debtor's overdrafts on a select basis and inform him when there was a lack of funds in his account to pay his bills as they became due.

1475 and for judgment of $7,000.00. The company also issued a criminal warrant pursuant to Virginia Code § 18.2–181 (Rep. Vol.1988) on December 4, 1987, charging Debtor with intent to defraud in the making or uttering of a bad check. The criminal action was dismissed on January 28, 1988.

Charles Chips, Inc., instituted an additional civil warrant on February 16, 1988, seeking a judgment of $5,038.18. Two judgments were entered thereafter in Charles Chips, Inc.'s favor totaling $10,853.18. This was in addition to the $4,700.00 in merchandise that Charles Chips, Inc., legally attached and seized prior to the aforementioned judgments being entered.

Debtor filed for relief under Chapter 7 on July 1, 1988. Charles Chips, Inc., filed this adversary proceeding on October 3, 1988, pursuant to Bankruptcy Code § 523 requesting that this court enter judgment against the Debtor and declare the debt nondischargeable.

■ Charles Chips, Inc., seeks to have the indebtedness owed to it by Debtor declared nondischargeable under Bankruptcy Code § 523(a)(2)(A). That subsection states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A). The legislative history to Section 523(a)(2)(A) regarding the Reform Act of 1978 states:

Subparagraph (A) is intended to ratify current case law, e.g., *Neal v. Clark*, (1887), which interprets "fraud to mean actual fraud or positive fraud rather than fraud implied by law."

124 Cong.Rec.H. 11,095–96 (daily ed. Sept. 28, 1978); S. 17,412–13 (daily ed. Oct., 1978). Reprinted in 4 Norton Bankruptcy Law and Practice, Annotated Legislative History, Section 523, page 374 (Callaghan and Company, 1988). *See also In re Holt*, 24 B.R. 696, 698 (Bankr.E.D.Va.1982); *In re Lieberman*, 14 B.R. 881, 883 (Bankr.E.D.Va.1981). "Courts have consistently held that in order for § 17(a)(2) to bar a discharge, the party alleging fraud must prove actual or positive fraud, not merely fraud implied by law.[2] *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975). "Actual" fraud precluding discharge consists of any deceit, artifice, trick or design, involving the direct and active operations of the mind used to circumvent or cheat another of something said, done or omitted with design of perpetrating what is known to be a cheat or deception. *In re Davis*, 11 B.R. 156, 158 (Bankr.D.Vt.1980); 3 *Collier on Bankruptcy*, ¶ 523.08[5] at 523–52 (15th ed. 1988). "Fraud cannot be demonstrated by circumstances which permit reasonable inferences of nonfraudulent conduct." *Matter of Homer*, 45 B.R. 15, 22 (Bankr.W.D. Mo.1984).

■ Objections to discharge are strictly construed against the objecting creditor and liberally in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 560, 35 S.Ct. 287, 288, 59 L.Ed. 717, 719 (1915); *Roberts v. Ford*, 169 F.2d 151, 152 (4th Cir.1948); *Johnston v. Johnston*, 63 F.2d 24, 26 (4th Cir.1933); *Royal Indemnity Co. v. Cooper*, 26 F.2d 585, 587 (4th Cir.1928); *Lockhart v. Edel.*, 23 F.2d 912, 913 (4th Cir.1928). The purpose for this construction is to give the debtors "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710–11, 29 L.Ed.2d 233, 241 (1971); *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124, 127 (1970); *Local Loan Co. v.*

---

**2.** Though many of the cases cited *infra* refer to old Bankruptcy Act § 17 (former 11 U.S.C. § 35), as the relevant provisions are practically identical, the case law construing the old statute should be followed in interpreting the new. 3 *Collier on Bankruptcy*, ¶ 523.14 at 523–92, n. 1 (15th ed. 1988).

*Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Johnston v. Johnston,* 63 F.2d at 26; *Royal Indemnity Co. v. Cooper,* 26 F.2d at 587; *Lockhart v. Edel.,* 23 F.2d at 913. Accordingly, the burden of proving objections to discharge rests on the plaintiff. *Bankruptcy Rule* 4005. Proof must be by clear, cogent, and convincing evidence.[3] *Oriel v. Russell,* 278 U.S. 358, 362, 49 S.Ct. 173, 174, 73 L.Ed. 419, 424 (1929); *Brown v. Buchanan,* 419 F.Supp. 199, 201 (E.D.Va.1975); *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967); *In re Mullins,* 64 B.R. 287, 289 (Bankr.W. D.Va.1986), *aff'd,* 848 F.2d 184 (4th Cir. 1988); *In re Hempfner,* 52 B.R. 1020, 1022 (Bankr.W.D.Va.1985).

Additionally, this court must consider the entire evidence in the case when making decisions as to fraud. *See Wertz v. Rock–Ola, etc.,* 329 F.2d 116 (4th Cir.1964). Also, this court must look at the conduct of both debtor and creditor relating to the transactions in question as a decision on the merits involving equitable considerations. *Bennett v. W.T. Grant,* 481 F.2d 664 (4th Cir. 1973).

■ Charles Chips, Inc., claims it was induced to provide merchandise to Debtor by his representations and that it would not have extended said merchandise after July 1988 but for the Debtor's submission of checks and promise to bring his account current. The evidence here falls short of clear, cogent, and convincing in establishing the Debtor's intent to deceive and, thus, fails to support the complaint.

What we have here is simply a pattern of doing business between these parties. Charles Chips, Inc., in its November 6, 1986, letter notified the debtor that he could only receive merchandise if a bad check was replaced by a cashiers check or guaranteed funds. Charles Chips, Inc., did not abide by this letter which stated its policy nor did it ever insist the Debtor do so. In fact, on many occasions after the said letter, Charles Chips, Inc., submitted the Debtor's bad checks a second time while also extending merchandise to the Debtor. The evidence reflects that this was the standard operating procedure between the parties which, over time, established an implied course of conduct.

"Actual" fraud precluding discharge, as declared in the law mentioned above, requires this Court to focus on the Debtor's actual state of mind at the time he gave the checks to Charles Chips, Inc. The Debtor testified that he wrote checks with the anticipation of receiving income to cover the same.[4] In fact, prior to the checks and debts in question, Debtor did receive income sufficient to cover the bad checks. This Court finds no evidence indicating the Debtor intended differently when he wrote check No. 1475 or No. 1489 enabling him to receive more merchandise from Charles Chips, Inc.[5]

Furthermore, Charles Chips, Inc., fails to demonstrate that it relied on statements made or checks written by the Debtor when it extended merchandise to him. Mr. Puccinelli's testimony alone indicates that he knew the Debtor always had financial trouble as far as paying on time and therefore he was more lenient in working with him. In light of Charles Chips, Inc.'s failure to follow their own policy and the course of conduct established between the parties, this Court cannot infer misrepresentation or fraud from the mere issuance of the bad checks where there is reasonable inferences of nonfraudulent conduct and

---

3. The recent case of *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988) would appear to change the burden; however, a close examination of the case reflects that it dealt with a non-fraud question. *See In re King,* slip op., (E.D.Va. Mar. 8, 1989) and *In re Zack, Jr.,* 99 B.R. 717 (E.D.Va. 1989).

4. While the evidence amply demonstrates that Debtor gave Charles Chips, Inc., checks which he knew were not backed by sufficient funds at that moment, it does not demonstrate that he had any intent to permanently deprive Charles Chips, Inc., of the value of its merchandise by giving checks which would be worthless when presented for payment.

5. This court does not and cannot approve of Debtor's pre-petition practice of continually running an underfunded checking account and issuing checks which were not honored upon presentation.

such was simply the continuation of the ongoing practices between the parties.

This Court, having carefully reviewed all the evidence presented, finds that the Debtor did not intentionally make false statements with reference to the debts in question; that the creditor-debtor relationship, which existed from August 1985 to October 1987, was primarily the result of a business arrangement with each party receiving benefits; and that Charles Chips, Inc., relied more on the Debtor's prior performance record than on telephone conversations with the Debtor or checks tendered by the Debtor.

The lack of interest coupled with the lack of reliance requires this Court to find that the complaintant failed to carry its burden of persuasion, and the debt is therefore dischargeable in Bankruptcy.

Accordingly, it is

### ORDERED

that Charles Chips, Inc.'s complaint to have the debt declared nondischargeable under Bankruptcy Code § 523(a)(2)(A) is DENIED and this complaint dismissed and closed.